**In re Vincent BOLOGNA and Laura Bologna, Debtors.**

**Krenie STOWE and Marie Stowe, Plaintiffs,**

v.

**Vincent BOLOGNA and Laura Bologna, Defendants.**

**Bankruptcy No. 94–16929–CJK. Adv. No. 95–1030.**

United States Bankruptcy Court, D. Massachusetts.

March 26, 1997.

---

**630**

Mark D. Stern, Somerville, MA, for Plaintiffs.

Joseph I. Schindler, Boston, MA, for Debtor.

### MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS' RENEWED MOTION FOR SUMMARY JUDGMENT AS TO COUNT ONE

CAROL J. KENNER, Chief Judge.

In Count One of their complaint in this adversary proceeding, the Plaintiffs, Krenie Stowe and Marie Stowe, seek a determination that a judgment debt owed to them by Debtor Vincent Bologna, arising from his alleged mishandling of a security deposit they gave him under a lease, is excepted from discharge as a debt for "defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4).[1] The adversary proceeding is before the Court now on the Plaintiffs' motion for partial summary judgment as to Count One. In their motion, the Plaintiffs seek a determination that, by the doctrine of collateral estoppel, their judgment against the Debtor establishes for purposes of this action that (1) on or about August 31, 1986, the Plaintiffs paid $2,500 to the Debtor as a security deposit, as that term is defined in Massachusetts law, G.L. c. 186, § 15B, and (2) that the Debtor violated this statute by failing to deposit the $2,500 in an account separate from the Debtor's own funds and by failing to pay the Stowes interest thereon. They further seek a determination that (3) as a matter of law, these violations constituted "defalcation while acting in a fiduciary capacity" as defined in § 523(a)(4) of the Bankruptcy Code; and that (4) the portion of the state court judgment that is allocable to this defalcation and, by virtue thereof, excepted from discharge is $51,685.29 plus accruing interest. The Debtor opposes the motion. For the reasons set forth below, the Court will deny the motion for summary judgment but also order that the issue of fiduciary capacity is deemed established for purpose of trial.

### Motion for Summary Judgment

A party is entitled to summary judgment only upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). Where the burden of proof at trial would fall on the party seeking summary judgment, as it does with respect to the Plaintiffs, that party must support its motion with evidence—in the form of affidavits, admissions, depositions, answers to interrogatories, and the like—as to each essential element of its cause of action. The evidence must be such as would permit the movant at trial to withstand a motion for directed verdict under F.R.Civ.P. 50(a). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the motion is properly supported, the burden shifts to the adverse party to submit evidence demonstrating the existence of a genuine issue as to at least one material fact. If the adverse party does not so respond, "summary judgment, if appropriate, shall be entered against the adverse party." F.R.Civ.P. 56(e).

### Collateral Estoppel

The Plaintiffs must first establish that their judgment against the Debtor arises from acts—violations of G.L. c. 186, § 15B—that constitute "defalcations while acting in a fiduciary capacity" within the meaning of 11 U.S.C. § 523(a)(4). To do so, the Plaintiffs rely on the state court judgment itself and the doctrine of collateral estoppel.

Collateral estoppel principles apply in proceedings to determine the dischargeability of a debt under § 523(a). *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). Under the full faith and credit statute, 28 U.S.C. § 1738,[2] the preclusive effect of a state court judgment in a subsequent nondischargeabili-

---

**1.** The complaint also states objections under § 523(a)(4) and (a)(6) to the dischargeability of two other debts, an objection to discharge under § 727(a)(4)(A) as against both Debtors, and two counts to set aside alleged fraudulent conveyances.

**2.** In relevant part, the statute provides that the judicial proceedings of any state, territory, or

ty proceeding under federal bankruptcy law is governed by the collateral estoppel law of the state from which the judgment is taken.[3] Therefore, the preclusive effect of the Plaintiffs' judgment must be evaluated under Massachusetts law.

 Under Massachusetts law, "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Fay v. Federal National Mortgage Association*, 419 Mass. 782, 789, 647 N.E.2d 422 (1995), citing *Fireside Motors, Inc. v. Nissan Motor Corp. in U.S.A.*, 395 Mass. 366, 372, 479 N.E.2d 1386 (1985), quoting Restatement (Second) of Judgments, § 27 (1982). Provided the latter action is between the same parties as the former, collateral estoppel will apply to an issue of fact or law when four further conditions are satisfied: (1) the earlier adjudication was a final judgment on the merits; (2) the issue decided in the prior action is identical to the one presented in the action in question; (3) the issue was actually litigated in the prior action; and (4) the issue was essential to the earlier judgment. *Id.* The Plaintiffs must satisfy each requirement for each issue of fact or law they would establish by collateral estoppel, of which there are three: (1) that the Debtor held the Plaintiffs' security deposit in a "fiduciary capacity"; (2) that, in his fiduciary capacity, he committed defalcations; and (3) that the defalcations are the basis for the judgment debt.

### 1. *A Valid and Final Judgment on the Merits*

The Plaintiffs must first establish that the judgment on which they rely is a valid and final judgment on the merits. The Plaintiffs have not produced the judgment in support of this motion. However, in his second amended answer to the complaint, the Debtor concedes that judgment entered for the Plaintiffs and against him on the Counts III and IV of the state court complaint, the counts that gave rise to the debt at issue in this motion. Therefore, the Plaintiffs have established that the judgment on which they rely is a valid and final judgment on the merits.

### 2. *Identity of Issues*

The Court must determine whether the issues decided in the prior action are identical to the issues presented in the present action. The Plaintiffs contend that the state court's judgment was predicated on factual and legal conclusions that satisfy the requirements of § 523(a)(4). In relevant part, the state court determined that the Debtor had violated G.L. c. 186, § 15B(3)(a) by failing to hold the Plaintiffs' security deposit in a separate, interest-bearing bank account. The Plaintiffs argue that this adjudication establishes, for purposes of this action, that the Debtor committed a defalcation while acting in a fiduciary capacity. They reason that, as a matter of law, a landlord holding a security deposit subject to the requirements of G.L. c. 186, § 15B does so "in a fiduciary capacity" within the meaning of 11 U.S.C. § 523(a)(4); and that a landlord's failure to deposit and hold the security deposit in a separate, interest-bearing account constitutes a "defalcation" while acting in a fiduciary capacity, also within the meaning of 11 U.S.C. § 523(a)(4).

#### a. *Fiduciary Capacity*

 In support of the first point—that a landlord holding a security deposit subject to

---

possession of the United States "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory, or Possession from which they are taken." 28 U.S.C. § 1738.

**3.** *In re Nourbakhsh*, 67 F.3d 798, 800–801 (9th Cir.1995), citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985); *Rally Hill Productions, Inc. v. Bursack (In re Bursack)*,

65 F.3d 51, 53 (6th Cir.1995); *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675–676 (11th Cir.1993); *Johnson v. Keene (In re Keene)*, 135 B.R. 162, 165–166 (Bankr.S.D.Fla. 1991); see also *Nottingham Partners v. Trans–Lux Corp.*, 925 F.2d 29, 32 (1st Cir.1991) ("In ascertaining whether issue preclusion flows as a consequence of previous state court litigation, a federal court must look to state law") and *United States v. One Parcel of Real Property*, 900 F.2d 470, 473 (1st Cir.1990) (same).

the requirements of G.L. c. 186, § 15B does so "in a fiduciary capacity" within the meaning of 11 U.S.C. § 523(a)(4)—the Plaintiffs cite *Brixius v. Christian (In re Christian)*, 172 B.R. 490 (Bankr.D.Mass.1994). In that decision, Judge Boroff held that a landlord holding a security deposit subject to the requirements of G.L. c. 186, § 15B does so "in a fiduciary capacity" within the meaning of 11 U.S.C. § 523(a)(4). This Court agrees.

The definition of "fiduciary capacity" is a matter of federal law, which has consistently limited its scope to the capacity of one who holds property under either an express trust or, as alleged in this case, a technical trust, but not under a trust imposed by law as a remedy, as a constructive trust, an implied trust, or a trust *ex maleficio*. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *Matter of Marchiando*, 13 F.3d 1111, 1115 (7th Cir. 1994). Unlike an express trust, which requires a declaration of trust and the intent to create a trust relationship with respect to a clearly defined res, a technical trust is one imposed by statutory or common law. *Windsor v. Librandi (In re Librandi)*, 183 B.R. 379, 382–383 (M.D.Pa.1995); *State of New Jersey v. Kaczynski (In re Kaczynski)*, 188 B.R. 770, 774 (Bankr.D.N.J.1995). The basis in this case is a statute. A technical trust exists where the statute (1) defines the trust res, (2) spells out the trustee's fiduciary duties, and (3) imposes a trust prior to and without reference to the wrong that created the debt. *Brixius v. Christian*, 172 B.R. at 495; *Windsor v. Librandi*, 183 B.R. at 382–383; *State of New Jersey v. Kaczynski*, 188 B.R. at 774. Though it need not employ the word "trust" or the terminology of trust law, the statute must manifest an express legislative design to create a trust or trust-type relationship. *Brixius v. Christian*, 172 B.R. at 495; *State of New Jersey v. Kaczynski*, 188 B.R. at 774.

With respect to the security deposits that residential tenants give their lessors in Massachusetts, G.L. c. 186, § 15B satisfies these requirements. It first provides that

> [a] security deposit shall continue to be the property of the tenant making such deposit, shall not be commingled with the assets

of the lessor, and shall not be subject to the claims of any creditor of the lessor or of the lessor's successor in interest.

G.L. c. 186, § 15B(1)(e). It goes on to provide that upon receipt of the security deposit, the lessor must, among other things, maintain records of the deposit for the tenant's inspection, § 15B(2)(d); deposit the security deposit in a separate interest bearing account, § 15B(3)(a); inform the tenant of the bank and account number where the deposit is kept, § 15B(3)(a); account annually to the tenant for the deposit and the interest payable thereon, § 15B(3)(b); at the end of each year of tenancy, pay accrued interest to the tenant or notify the tenant that he or she may deduct the interest due from the next rental payment, § 15B(3)(b); and, within thirty days after termination of the tenancy, remit the deposit the tenant, § 15B(4). *Brixius v. Christian*, 172 B.R. at 497. These obligations arise upon the landlord's receipt of the deposit and "irrespective of any breach or wrong committed by the landlord." *Id.* Thus the statute satisfies the three requirements of a technical trust and clearly manifests a legislative design to impose a trust-type relationship.

The Court concludes that in view of G.L. c. 186, § 15B, a landlord holds a tenant's security deposit in a fiduciary capacity within the meaning of § 523(a)(4). Consequently, the state court's determination that the $2,500 given by the Plaintiffs to the Debtor was given as a security deposit and held subject to the requirements of G.L. c. 186, § 15B is identical or equivalent to a determination that Debtor held the funds in a fiduciary capacity for purposes of that § 523(a)(4).

**b. *Defalcation***

The Plaintiffs contend that the state court's determination that the Debtor had failed to deposit and hold the security deposit in a separate, interest-bearing account, in violation of G.L. c. 186, § 15B(3)(a), is identical to a determination that the Debtor committed a "defalcation" within the meaning of 11 U.S.C. § 523(a)(4). This argument requires that the Court compare the definition of defalcation under § 523(a)(4) with the requirements for an award of damages to the Plaintiffs under G.L. c. 186, § 15B(3)(a).

■ The "Memorandum Decision and Order for Judgment" entered by the state court judge indicates that damages for the security deposit counts were entered pursuant to G.L. c. 186, § 15B(7). In relevant part, subsection (7) provides that if the lessor fails to deposit the security deposit in an account as required by § 15B(3), the tenant shall be awarded damages.[4] Clearly this section requires proof that the lessor failed to deposit the security deposit in a separate, interest-bearing account. However, it sets forth no requirement of fault or intent. Emphasizing that the statute is unambiguous, the Supreme Judicial Court has held that an award of damages under § 15B(7) "is not conditional on a finding of bad faith or willful violations by the lessor." *Mellor v. Berman*, 390 Mass. 275, 278–279, 454 N.E.2d 907 (1983). Rather, "[t]he legislative history of G.L. c. 186, § 15B conclusively shows that the Legislature intends *any* violation of G.L. c. 186, § 15B(6)(a), (d), and (e), to result in the imposition of treble damages." *Mellor v. Berman*, 390 Mass. at 283, 454 N.E.2d 907 (emphasis added); *Castenholz v. Caira*, 21 Mass.App.Ct. 758, 762, 490 N.E.2d 494 (1986) (citing *Mellor*, the court held that "any one of violations of duty listed in subsection (6) will entitle the tenant to immediate return of his entire deposit on request, regardless of whether the violation was innocent or wilful"). I conclude that an award of damages under § 15B(7) requires no showing of fault or intent.

The requirements of "defalcation," as used in 11 U.S.C. § 523(a)(4), are more difficult to pin down. The term is not defined in the Bankruptcy Code; and, though the term was carried into § 523(a)(4) of the present Bankruptcy Code from § 17a(4) the Bankruptcy Act of 1898 and predates even that act,[5] the legislative history sheds no light on its meaning. *Meyer v. Rigdon*, 36 F.3d 1375, 1382 (7th Cir.1994). *Black's Law Dictionary* defines "defalcation" as

> [t]he act of a defaulter; act of embezzling; failure to meet an obligation; misappropriation of trust funds or money held in any fiduciary capacity; failure to properly account for such funds. Commonly spoken of officers of corporations or public officials.

*Black's Law Dictionary* 417 (6th ed. 1990). And *Black's* defines "defaulter" as "[o]ne who is in default. One who misappropriates money held by him in an official or fiduciary character, or fails to account for such money." *Id.* In general usage, "defalcate" means "to misuse funds; embezzle."[6] *American Heritage Dictionary* 374 (2d college ed. 1985).

The cases agree that in § 523(a)(4), defalcation refers to the failure of a fiduciary to produce or account for funds entrusted to him or her. *Quaif v. Johnson*, 4 F.3d 950, 955 (11th Cir.1993) (defalcation refers to a failure to produce funds entrusted to a fiduciary); and *Brixius v. Christian*, 172 B.R. at 495 ("A defalcation is nothing more than a failure to account for money held in a fiduciary capacity"). However, the cases differ on the level of fault and the type of intent that a defalcation requires. Some, including the Ninth Circuit Court of Appeals, hold that even an innocent default will suffice, so as to reach the conduct of all fiduciaries who are

---

4. Subsection 15B(7) provides:

> If the lessor or his agent fails to comply with clauses (a), (d), or (e) of subsection 6, the tenant shall be awarded damages in an amount equal to three times the amount of such security deposit or balance thereof to which the tenant is entitled plus interest at the rate of five per cent from the date when such payment became due, together with court costs and reasonable attorney's fees.

G.L. c. 186, § 15B(7). · Subsection (6)(a) provides that

> The lessor shall forfeit his right to retain any portion of the security deposit for any reason,

or, in an action by a tenant to recover a security deposit, to counterclaim for any damage to the premises if he:

> (a) fails to deposit such funds in an account as required by subsection (3).

G.L. c. 186, § 15B(6)(a).

5. See *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir.1937) (L. Hand, J.), which traces the use and meaning of defalcation in federal bankruptcy law since 1841.

6. See also *In re Turner*, 134 B.R. 646, 657 (Bankr.N.D.Okl.1991) on the etymology and history of "defalcation."

short on their accounts.[7] Many hold that negligence or ignorance would suffice, without proof of intentional wrongdoing.[8] Others, including the Courts of Appeals of the Fifth, Sixth, and Seventh Circuits, require fault greater than mere negligence: "more than mere negligence,"[9] recklessness,[10] intentional conduct (or at least more than mere negligence or mistake of fact),[11] or "willful neglect of duty, even if not accompanied by fraud or embezzlement."[12] One court required "some element of bad faith or reprehensible conduct,"[13] but its decision has been overruled, and most reject any requirement of bad faith, ill will, malice, specific intent, or scienter.[14] The First Circuit Court of Appeals has not addressed the issue.

7. In *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182 (9th Cir.1996), the Ninth Circuit held that "defalcation 'includes the innocent default of a fiduciary who fails to account fully for money received,'" and that "an individual may be liable for defalcation without having the intent to defraud." *Id.* at 1187–1187. In doing so, the Court cited and relied on *In re Baird*, 114 B.R. 198, 204 (9th Cir. BAP 1990) ("In the context of section 523(a)(4), the term 'defalcation' includes innocent as well as intentional or negligent defaults so as to reach the conduct of all fiduciaries who are short on their accounts."), and expressly overruled *In re Martin*, 161 B.R. 672, 678 (9th Cir. BAP 1993) ("We ... hold that the mere failure to use ordinary care in accounting for an asset does not *per se* constitute "defalcation" within the scope of § 523(a)(4). There simply must be a showing of some element of bad faith or reprehensible conduct for nondischargeability under § 523(a)(4)."). The Court of Appeals's opinion does not discuss the contrary authority from other circuits.

8. *Kwiat v. Doucette*, 81 B.R. 184, 190 (D.Mass. 1987) (in a case where the fiduciary's breach of duty was knowing and willful, the court adopted the position that a failure to account for money received in a fiduciary capacity is a defalcation, "regardless of the fact that such failure may have resulted from ignorance or negligence"); *Hoff v. Carroll (In re Carroll)*, 140 B.R. 313, 316 (Bankr. D.Mass.1992) (Hillman, J.).

9. *Meyer v. Rigdon*, 36 F.3d 1375, 1382–1385 (7th Cir.1994). In this case, the Seventh Circuit reasoned that, in view of the split of authority and the principle that objections to discharge should be construed strictly against the creditor and in favor of the debtor, defalcation should be construed to require more than mere negligence, and that a knowing breach of duty would constitute a defalcation.

10. *In re Gaubert*, 149 B.R. 819, 827 (Bankr. E.D.Tex.1992). The *Gaubert* court settled on the requirement of recklessness in an attempt to reconcile the Fifth Circuit's "willful neglect of duty" standard, *In re Moreno*, 892 F.2d 417, 421, (5th Cir.1991), with its earlier holding in *Carey Lumber Co. v. Bell*, 615 F.2d 370, 376 (5th Cir. 1980), that intent was not necessary to establish a defalcation. *Gaubert* held that the "willful neglect of duty" standard would be satisfied by mere recklessness. Since *Moreno*, the Fifth Circuit has reiterated the "willful neglect of duty"

standard, but without expanding on its meaning, in both *Matter of Bennett*, 989 F.2d 779, 790 (5th Cir.1993), and *Matter of Davis*, 3 F.3d 113, 115 (5th Cir.1993).

11. *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 254–257 (6th Cir.1982) (The objective fact that monies subject to trust were used for purposes contrary to the trust is a defalcation "so long as the use was not the result of mere negligence or a mistake of fact; subjective intent to violate a known fiduciary duty or bad faith is irrelevant." *Id.* at 257. The fiduciary is charged with knowledge of the law imposing and defining his or her duties, such that a default founded on ignorance of the law is, despite that ignorance, no less a defalcation. *Id.*); *Old Republic Surety Co. v. Richardson (In re Richardson)*, 178 B.R. 19, 29 (Bankr.D.Dist.Col.1995) (defalcation does not include mere negligence or mistake of fact; but a fiduciary is charged with knowledge of the law, so an intentional act in violation of fiduciary duty, even if based on a mistake of law, is nonetheless a defalcation).

12. *Matter of Moreno*, 892 F.2d 417, 421 (5th Cir.1990), citing L. King, 3 Collier on Bankruptcy ¶ 523.14, at 523–93 to 523–95 (15th ed. 1988), quoting *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir.1937) (L. Hand, J.); and *Jacobs v. Pierce*, 173 B.R. 20, 25 (D.Mass. 1994).

13. *In re Martin*, 161 B.R. 672, 678 (9th Cir. BAP 1993) ("We ... hold that the mere failure to use ordinary care in accounting for an asset does not *per se* constitute "defalcation" within the scope of § 523(a)(4). There simply must be a showing of some element of bad faith or reprehensible conduct for nondischargeability under § 523(a)(4)."), expressly overruled in *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182 (9th Cir.1996) ("defalcation 'includes the innocent default of a fiduciary who fails to account fully for money received'").

14. See, for example, *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 254–257 (6th Cir.1982), adopting "an objective standard" that, regardless of actual knowledge, charges a debtor with knowledge of the law, and that does not weigh intent or motive. See also *Houston v. Capps (In re Capps)*, 193 B.R. 955, 963–965 (Bankr.N.D.Ala.1995) (defalcation "does not

This Court rejects the position that any inability to account will suffice. In *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 512 (2d Cir.1937) (L. Hand, J.) after struggling, largely without success, to determine what fault is required by the term "defalcation" (as appearing then in § 17a(4) of the Bankruptcy Act of 1898, the predecessor to the present § 523(a)(4)), the court nonetheless stated, "We do not hold that no possible deficiency in a fiduciary's accounts is dischargeable." *Id.* at 512. In view of this holding, of the various decisions cited above that require more than mere negligence, of the principle that the Code should be construed to provide a fresh start to honest debtors, and of the principle that exceptions to discharge should be construed narrowly, this Court holds that a default does not constitute a defalcation without a showing of fault. I do not now specify the level of fault that § 523(a)(4) requires.[15] Whatever the level, the Plaintiffs cannot establish fault or defalcation by collateral estoppel, as fault was not an issue in the state court proceeding.

### 3. *Actually Litigated and Essential to the Judgment*

In order to prevail in the state court on their count under G.L. c. 186, § 15B, it was necessary for the Plaintiffs to establish that the Debtor received the Plaintiffs' funds as a security deposit. The Plaintiffs have shown that that issue was disputed and actually litigated. Having held that the state court's ruling on this issue is identical or equivalent to a determination that Debtor held the funds in a fiduciary capacity for purposes of § 523(a)(4), I now further hold that that issue was actually litigated in the state court and was essential to its judgment.

In order to prevail in the state court, it was also necessary for the Plaintiffs to establish that the Debtors failed to place the security deposit in a separate, interest-bearing account. See G.L. c. 186, § 15B(7). However, the Plaintiffs have not established that this issue was actually litigated.[16] Moreover, as G.L. c. 186, § 15B(7) required no showing of fault, no showing of fault was necessary to the judgment.

### 4. *Conclusions on Collateral Estoppel*

I conclude that by collateral estoppel, the state court judgment establishes, for purposes of Count One in this adversary proceeding, that the Debtor received and held the funds at issue "in a fiduciary capacity" within the meaning of 11 U.S.C. § 523(a)(4).[17]

have to be the result of intentional wrongdoing or have been motivated by criminal intent, ill will, malice, bad faith, or the subjective intent to violate a known fiduciary duty") and cases cited; and *Peerless Insurance Co. v. Misiaszek (In re Misiaszek)*, 162 B.R. 80, 82 (Bankr.D.N.H.1993) (Yacos, J.) ("My view is that even if misconduct is defined as element of defalcation, it can be equated with a failure to observe clear and specific restrictions and limitations upon the fiduciary in either the trust document or the applicable statutory law and does not require as an element therefore some sort of bad faith on the part of the fiduciary.").

**15.** That decision is better made with the benefit of the evidence in this case and of any briefs the parties may wish to submit on this issue.

**16.** The issue does not appear to have been given to the jury, which was asked only whether the money given to the Debtor was a security deposit. And the court did not address the issue on the Plaintiff's earlier motion for summary judgment. In his memorandum of decision on the motion for summary judgment, Judge Hallisey merely held that because of a narrow issue of

fact (as to whether the funds were a security deposit), summary judgment was not appropriate. I cannot determine whether he ascertained that the remaining issues had been established in favor of the Plaintiffs, or whether he merely denied the motion on the basis of that one issue. Despite Mass.R.Civ.P. 56(d) (where, on a motion for summary judgment, judgment is not rendered on the whole case and a trial is necessary, the court shall, if practicable, ascertain and make an order specifying the facts that appear without substantial controversy), he did not in his memorandum of decision specify that any facts or issues had been established.

**17.** I do not hold that the Debtor received the funds with the understanding that they were a security deposit: I cannot determine from G.L. c. 186, § 15B or the cases construing it whether the Superior Court judgment required a showing that the Debtor understood the funds to be a security deposit; nor can I determine from the portions of the record before me whether that issue was actually litigated. I hold only that the funds were a security deposit within the meaning of G.L. c. 186, § 15B, and therefore were held in a fiduciary capacity within the meaning of § 523(a)(4).

However, the judgment fails to establish a defalcation or any element of one.

### Other Evidence of Defalcation

 The Plaintiffs contend that the defalcation can, in the alternative, be established by certain deposition testimony given by the Debtor and his wife. However, the testimony cited is neither identified nor authenticated: the Court cannot determine from the cited exhibits whose testimony is reproduced at Exhibits O and P. Moreover, if the testimony is the Debtor's, it is evidence that he did not receive the Plaintiffs' funds with the understanding that they were a security deposit; rather, he believed that the money was rent for the Plaintiffs' last month of tenancy. On a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. If the Debtor did not understand the funds to be a security deposit, this may constitute a mistake of fact that, under the standard I am inclined to apply, would nullify the fault necessary to establish a defalcation within the meaning of § 523(a)(4). In short, the evidence demonstrates the existence of a genuine issue of material fact on the issue of fault and intent.

### Apportionment of Damages

The defalcation issue being yet unresolved, it is inappropriate to address the quantification of damages issues at this juncture.

### ORDER

For the reasons set forth above, the Plaintiffs' motion for summary judgment as to Count One of their complaint is hereby DENIED. However, for purposes of Count One, it is deemed established that the Debtor received and held the funds at issue "in a fiduciary capacity" within the meaning of 11 U.S.C. § 523(a)(4).