### In re John W. PAEPLOW, Debtor.

### Anthony TANNEBERGER and Leslie Tanneberger, Plaintiffs,

### v.

### John W. PAEPLOW, Defendant.

### Bankruptcy No. 97–11284 FGC. Adversary No. 97–1097.

United States Bankruptcy Court, D. Vermont.

Feb. 20, 1998.

---

M.S. Gawne, Brown, Cahill, Gawne & Miller, St. Albans, VT, for Plaintiffs.

R.J. Obuchowski, Obuchowski Law Office, Bethel, VT, for Defendant.

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING ITS MOTION TO DISMISS

FRANCIS G. CONRAD, Bankruptcy Judge.

This matter comes before us on the parties' Cross Motions for Summary Judgment under Fed.R.Civ.P. 56, made applicable by Fed.R.Bkrtcy.P. 7056, and on the Paeplow's Motion to Dismiss under Fed.R.Civ.P. 12(b)(6), made applicable by Fed.R.Bkrtcy.P. 7012.[1] For the various reasons that follow, we hold that no fiduciary relationship was created when the Tannebergers gave Paeplow, their former landlord and bankruptcy debtor, a security deposit. Therefore, Paeplow is entitled to judgment as a matter of law on the Tannebergers' § 523(a)(4) claim. We deny Paeplow's Motion to Dismiss the Tannebergers' § 523(a)(6) claim because a cause of action has been stated.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts are not in dispute. When the Tannebergers rented a home from Paeplow in Georgia, Vermont, they delivered a $3,800.00 security deposit to Paeplow, assuming it would be held for the duration of the tenancy and returned at its termination. The Tannebergers moved out on January 5, 1997 and Vermont law Title 9 V.S.A. § 4461[2] required Paeplow to either return the security deposit or provide a written statement itemizing the reasons for any deductions within 14 days. Paeplow submitted neither. The Tannebergers brought the matter before the Franklin Superior Court in Vermont, which, on August 29, 1997, entered a Final Judgment in their favor in the amount of $8,798.00.[3] Paeplow filed a Chapter 7 petition on September 2, 1997 and the Tannebergers brought this Adversary Proceeding to determine dischargeability based on §§ 523(a)(4) and 523(a)(6).

### SUMMARY JUDGMENT

To prevail on a motion for summary judgment, the movant must satisfy the criteria set forth in Fed.R.Civ.P. 56 as made applicable by Fed.R.Bkrtcy.P. 7056. Fed.R.Civ.P. 56 provides in part:

[T]he judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, to-

---

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. § 157(I). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. 52, as made applicable to this proceeding by Fed.R.Bkrtcy.P. 7052.

2. Section 4461 "Security deposits" provides:
   (a) A security deposit is an advance, deposit or pre-paid rent, however named, which is refundable to the tenant at the termination or expiration of the tenancy. The function of a security deposit is to secure the performance of a tenant's obligations to pay rent and to maintain a dwelling unit.
   (b) The landlord may retain all or a portion of the security deposit for:

(1) non-payment of rent; (2) damage to property of the landlord, unless the damage is the result of normal wear and tear or the result of actions or events beyond the control of the tenant; (3) non-payment of utility or other charges which the tenant was required to pay directly to the landlord or to a utility; and (4) expenses required to remove from the rental unit articles abandoned by the tenant.
   (c) A landlord shall return the security deposit to a tenant within 14 days from the date on which the tenant vacated or abandoned the dwelling unit, with a written statement itemizing any deductions....

3. This amount represents the security deposit doubled, attorney's fees and costs as provided by statute. 9 V.S.A. § 4461.

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Eastman Machine Co., Inc. v. U.S.*, 841 F.2d 469 (2d Cir.1988); *Hossman v. Spradlin*, 812 F.2d 1019, 1020 (7th Cir.1987); *Clark v. Union Mutual Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir.1982); *U.S. Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir. 1975).

The primary purpose for granting a summary judgment motion is to avoid unnecessary trials where no genuine issue of material fact is in dispute. *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987). If the presentation by the nonmoving party in support of its version of the facts is such that the Court could not properly direct a verdict against it in a jury trial, or enter a judgment in favor of the moving party notwithstanding a verdict favorable to the nonmoving party, the motion for summary judgment may not properly be granted. *Eastman, supra*, 841 F.2d at 473, *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

In *Anderson, supra*, the Supreme Court directed that in determining a motion for summary judgment under Rule 56:

the judge must ask ... not whether ... the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—whether there is (evidence) upon which a jury can proceed to find a verdict for the party producing it . . . .

*Id.*, (citations omitted).

Thus, the function of a Bankruptcy Court when considering a motion for summary judgment is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be resolved. *Id.*, 477 U.S. at 246–51, 106 S.Ct. at 2509–11; *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir. 1986), *cert. den.*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

The party moving for summary judgment has the burden of clearly establishing that no relevant facts are in dispute. *Celotex, supra*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson, supra*, 477 U.S. at 252, 106 S.Ct. at 2512; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Eastman, supra*, 841 F.2d at 473. Speculation and conjecture will not suffice.

Once a party has met its initial burden, the opposing party must set forth specific facts showing that there is a genuine issue for trial and that the disputed fact is material. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983), *cert. den.*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Thus, if the movant carries its initial burden, the opposing party may not defeat the motion merely by relying on the contentions of its pleadings, but must produce significant probative evidence to support its position. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *U.S. v. Pent–R–Books, Inc.*, 538 F.2d 519, 529 (2d Cir.1976), *cert. den.*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).

Finally, in determining whether there is a genuine issue of material fact, we must view the evidence in the light most favorable to the party opposing the motion. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Eastman, supra*, 841 F.2d at 473; *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir.1985). Moreover, all inferences must be construed in favor of the nonmovant. *Diebold, supra*, 369 U.S. at 655, 82 S.Ct. at 994; *Eastman, supra*, at 473; *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984).

Rule 56 also imposes the dual burden on the movant to establish the absence of disputed material facts and that summary judg-

ment is warranted as a matter of law. *Boazman v. Economics Laboratory, Inc.*, 537 F.2d 210 (5th Cir.1976). It is inappropriate to grant summary judgment merely because a movant appears likely to prevail at trial; summary judgment may be granted only when the movant is entitled to relief beyond all doubt. *Federal Savings and Loan Ins. Corp. v. Williams*, 599 F.Supp. 1184 (D.Md. 1984).

The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson, supra*, 477 U.S. at 250, 106 S.Ct. at 2511; 9 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2524, at 541–42 (1971).

The record in a summary judgment proceeding includes more than a complaint and an answer. The Court must go beyond the mere pleadings of the parties and consider all of the admissible evidence set forth in the papers and all inferences reasonably drawn from such evidence to determine whether there is a genuine issue for trial. *Matter of Esposito*, 44 B.R. 817 (Bkrtcy.S.D.N.Y.1984). When an affidavit is submitted in connection with a motion for summary judgment, Rule 56(e) requires the affiant to set forth facts based on personal knowledge, rather than mere opinions or legal conclusions. An affidavit which is essentially conclusory and lacking in specific facts is inadequate to support the movant's burden. *Maldonado v. Ramirez*, 757 F.2d 48 (3rd Cir.1985). The moving party on a summary judgment motion meets its burden by affirmatively demonstrating from the record before the Court that there is no evidence to support an essential element of the nonmoving party's case. *Matter of Warner*, 65 B.R. 512 (Bankr. S.D.Ohio 1986).

The requirements for summary judgment are satisfied in this case because no material facts are in issue, and Paeplow is entitled to judgment as a matter of law on the § 523(a)(4) issue.

**11 U.S.C. § 523(a)(4)**

The Tannebergers ask us to determine that the State Court judgment against Paeplow is non-dischargeable under § 523(a)(4), which provides, in part: "A discharge under section 727 ... of this title does not discharge an individual debtor from any debt— ... (4) for fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). Thus, the threshold question is whether Paeplow was acting in a fiduciary capacity by holding the Tannebergers' security deposit. Tannebergers argue Paeplow was a trustee, holding their security deposit in trust, and the trust relationship created by Vermont statute is a fiduciary relationship within the meaning of 523(a)(4). We hold that the Vermont statute imposes no such trust relationship and therefore § 523(a)(4) does not prevent a discharge.

■■■ In a case decided under the Bankruptcy Act § 17,[4] the Supreme Court defined a fiduciary relationship as one arising from the imposition of an express or technical trust. *Davis v. Aetna Acceptance* Co., 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934). Courts have consistently followed this narrow definition. *In re Martin*, 161 B.R. 672, 676 (9th Cir. BAP (Cal.) 1993) *rev'd on other grounds; In re Gallaudet*, 46 B.R. 918, 924 (Bkrtcy.D.Vt.1985); *In re Bologna*, 206 B.R. 628, 632 (Bkrtcy.D.Mass.1997). A technical trust is a trust imposed by state common law or statute. *In re Bologna, supra*, 206 B.R. at 632. Although the necessary fiduciary relationship under § 523(a)(4) is a question of federal law, state law determines the existence of a trust. *In re Martin, supra*, 161 B.R. at 676. The statutory basis of the Tannebergers' claim is 9 V.S.A. § 4461. For the statute to create a trust it must define the trust res, spell out the trustee's duties and impose a trust prior to any wrongdoing. *In re Bologna, supra*, 206 B.R. at 632.

■■■ The statute need not use the word "trust" to impose such a relationship. *Id.*

---

**4.** Section 17(a)(4) of the Bankruptcy Act is the forerunner of 11 U.S.C. § 523(a)(4), and "[a]s the language of the provision governing defalcation while acting in a fiduciary capacity is almost identical under the Bankruptcy Act and the Bankruptcy Code, the case law construing Bankruptcy Act section 17(a)(4) should be followed in interpreting section 523(a)(4)." *In re Paley*, 8 B.R. 466, 468 (Bankr.E.D.N.Y.1981).

Indeed, the Vermont statute governing security deposits makes no mention of the term. It does sufficiently define the "res" and create a relationship, trust or not, prior to any wrongdoing. But it fails to impose a requirement that the landlord perform any duties except return the security deposit within 14 days "with a written statement itemizing any deductions." 9 V.S.A. § 4461(c). To be fair, a technical trust may also be "passive" or "one in which the trustee is (a) mere passive depositary of the property with no active duties to perform" thus requiring no activity on the part of the trustee. 89 C.J.S. Trusts § 17 (1955). A trust, however, is more than the sum of the three elements outlined above, so the lack of any statutory imposition of duties is not determinative here.

The statute uses the language "advance, deposit or pre-paid rent." 9 V.S.A. § 4461(a). It goes on to read, "[t]he function of a security deposit is to secure the performance of a tenant's obligations to pay rent and to maintain a dwelling unit." 9 V.S.A. § 4461(a). This language defines the security deposit as security. In the event that the tenant does not pay rent, damages the property, fails to pay a utility or other charge, or abandons property requiring the expense of removal, the security deposit may be retained by the landlord as long as he or she itemizes the deductions. We do not refer to a bank requiring a security deposit for credit card use as a "trustee". We call that bank a secured creditor. A trustee holds the trust res for the benefit of another. Here, a landlord holds a security deposit for his or her own benefit. A security deposit is not a trust res. Security is assurance, and a security deposit is assurance on deposit with a landlord.

The general definition of security deposit reads "[m]oney deposited by tenant with landlord as security for full and faithful performance by tenant of terms of lease, including damages to premises." Blacks's Law Dictionary 1217 (5th ed.1979). The term "security" is "usually applied to an obligation, pledge, mortgage, deposit, lien, etc., given by a debtor assure the payment or performance of his debt, by furnishing the creditor with a resource to be used in case of

failure in the principal obligation." *Id.*, at 1216. A security deposit in Vermont is money deposited by the tenant into the care of the landlord to ensure the payment or performance of his or her obligations under the lease. If the tenant fails in his or her obligation, the landlord may offset the failure by applying the deposit to the loss. This is more consistent with a debtor-creditor relationship than with a trust.

Lastly, the Vermont statute imposes no duty on a landlord to deposit the money into a separate, interest bearing account. A landlord may use the security deposit as he or she wishes, and is under no obligation to segregate. In determining the differences between "trust" and "debtor-creditor relationship," we are instructed that "when the 'trustee' of the funds is entitled to use them as his or her own and commingle them with his or her own money, a debtor creditor relationship exists, not a trust." *In re Shervin*, 112 B.R. 724, 734 (Bkrtcy.E.D.Pa.1990).

The idea of requiring landlords to segregate security deposits and refrain from commingling them with their own funds is not new. Vermont's neighbors, New York, Massachusetts, and New Hampshire, all have statutes mandating segregation. NY G.L.O. § 7–103 1. (1997); M.G.L.A. ch. 186, § 15B (3)(a) (1997); NH RSA § 540–A:6 II.(a) (1996). Vermont's statute does not require segregation, despite our neighbor's examples. While we are unwilling to conclude that a security deposit falls within the scope of the statute governing secured transactions because the issue was not raised by the parties, we do hold that a security deposit under Vermont law does not create a fiduciary relationship. Rather it creates a debtor-creditor relationship, to which § 523(a)(4) does not apply.

### 11 U.S.C. § 523(a)(6)

The Tannebergers also claim the debt is non-dischargeable under § 523(a)(6). They have not moved for summary judgment here, but Paeplow has moved to dismiss for failure to state a claim upon which relief can be granted. This Motion will be denied.

Dismissal based on a failure to state a claim is warranted only where the non-movant "can prove no set of facts in support of his claim which would entitle him to relief." *In re Maxwell Communication Corp.*, 93 F.3d 1036, 1044 (2nd Cir.1996), *quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Plaintiff's factual assertions are taken as true and "all permissible inferences are drawn in their favor." *Id.* A motion to dismiss may be granted only where "it appears with certainty that no set of facts could be proven at trial which would entitle plaintiff to any relief." *In re Rosen*, 151 B.R. 648, 652 (Bkrtcy.E.D.N.Y.1993), *quoting In re O.P.M. Leasing Servs., Inc.*, 21 B.R. 986, 991 (Bkrtcy.S.D.N.Y.1982).

 To succeed under § 523(a)(6), a creditor must show that the debtor caused willful and malicious injury. "The phrase 'willful and malicious injury' covers a willful and malicious conversion." 124 Cong.Rec., H11096 (daily ed. Sept. 28, 1978); S17412 (daily ed. Oct. 6, 1978; remarks of Rep. Edwards and Sen. DeConcini). Willful means deliberate and intentional. *In re Stelluti*, 94 F.3d 84, 87 (2nd Cir.1996) *(citations omitted)*. Malicious means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will," and may be constructive or implied by the facts and circumstances surrounding the act itself. *Id.*, at 87–88 *(citations omitted)*. Both elements must be present for a creditor to succeed. *In re Mills*, 111 B.R. 186, 194 (Bkrtcy.N.D.Ind.1988). Malice has been found where the debtor merely intended the act which caused the injury, not the injury itself. *Id.; In re Krautheimer*, 210 B.R. 37, 47 (Bkrtcy.S.D.N.Y.1997).

The Tannebergers alleged in their complaint that Paeplow converted their security deposit, causing willful and malicious injury. Despite the fact that there has been no discovery and the parties have claimed that discovery is unnecessary, taking the Tannebergers' allegations as true, we hold that it does not appear with certainty that the Tannebergers could prove no set of facts which would entitle them to relief. Accordingly, the Motion to dismiss is denied. Counsel for Paeplow shall, within 10 days of this Memorandum of Decision, settle an order consistent herewith.