CYR, Senior Circuit Judge.
 

 Smith Barney, Inc. (“Smith Barney”) challenges a district court order which rejected its intermediate appeal from a bankruptcy court order which dismissed its adversary proceeding contesting the dischargeability of a $272,596 state court judgment obtained by Smith Barney against chapter 7 debtor Josephine Stran-gie. We affirm.
 

 I
 

 BACKGROUND
 

 Anthony Strangie incorporated Mystic Valley Financial Corporation (“Mystic Valley”) in 1989, designating himself and Josephine Strangie, his wife, as its only officers and directors. Josephine played no significant role in the operation of Mystic Valley, other than as corporate clerk and a designated signatory on the corporate checking account. Although there is no evidence that Josephine ever signed corporate checks, she acknowledged filling in dates, payee names, and amounts on some corporate checks, always in strict accordance with her husband’s explicit directions. She had no personal knowledge regarding Mystic Valley’s assets or account balances; and all corporate checks, including those filled in by Josephine pursuant to her husband’s direction, were signed by Anthony Strangie alone.
 

 In June 1991, Anthony Strangie directed Smith Barney to purchase securities on the Mystic Valley securities account at a cost of $89,376. After considerable procrastination, Anthony sent Smith Barney a Mystic Valley check, drawn and signed by him. Not only was the check issued without sufficient funds, but Anthony immediately stopped payment on it as well.
 

 The following year, Smith Barney obtained a Florida state court judgment for $272,596 against Mystic Valley. Thereafter, it brought suit against Mystic Valley and the Strangie’s in a Massachusetts state court for the purpose of enforcing its Florida judgment. While the Massachusetts action remained pending, Anthony Strangie died. Shortly thereafter the Massachusetts court conditionally allowed Josephine Strangie’s counsel to withdraw from the case.
 

 Five months later, Smith Barney moved for summary judgment on the ground that the Mystic Valley corporate veil should be pierced so as to allow the Florida judgment to be enforced against Josephine. Smith Barney maintained that Josephine
 
 *194
 
 had disregarded corporate formalities, commingled corporate and personal assets, diverted Mystic Valley assets to personal purposes, and fraudulently misused the corporate form to induce Smith Barney to transact business with Mystic Valley. Absent opposition to the motion, the Massachusetts state court directed summary judgment for Smith Barney by endorsement on August 26,1996.
 

 After Josephine Strangie filed her chapter 7 petition, Smith Barney initiated an adversary proceeding in the bankruptcy court, claiming that her fraudulent misuse of the corporate form had rendered the $272,596 judgment nondischargeable.
 
 See
 
 Bankruptcy Code §§ 523(a)(2), (a)(4), (a)(6); 11 U.S.C. §§ 523(a)(2), (a)(4), (a)(6). Shortly after trial began before the bankruptcy court, Smith Barney filed a motion
 
 in limine
 
 contending that the default judgment obtained in Massachusetts state court on August 26, 1996, collaterally es-topped Josephine from relitigating whether the Mystic Valley corporate form should be disregarded, thereby necessitating a determination that the default judgment obtained by Smith Barney was nondischargeable under Bankruptcy Code § 523.
 

 Although the bankruptcy court denied the motion
 
 in limine,
 
 it invited Smith Barney to adduce evidence as to (i) whether Josephine had been sufficiently active in Mystic Valley to warrant piercing the corporate veil, and (ii) whether her conduct constituted sufficient grounds for determining that the Smith Barney debt was nondischargeable. At that point, Smith Barney briefly called Josephine to the stand, then rested its case. In due course, the bankruptcy court entered judgment for Josephine. Following an unsuccessful intermediate appeal to the district court, Smith Barney brought the instant appeal.
 

 II
 

 DISCUSSION
 

 A.
 
 The Motion in Limine
 

 First, Smith Barney contends that the bankruptcy court abused its discretion by denying the motion
 
 in limine.
 

 [1]
 

 Under Massachusetts law, “collateral estoppel precludes relitigation of issues determined in prior actions between the parties or those in privity with the parties, [provided the issues were] actually litigated in the first action, and determined by a ‘final judgment on the merits.’ ”
 
 Sena v. Commonwealth,
 
 417 Mass. 250, 629 N.E.2d 986, 992 (1994) (citations omitted).
 
 [2]
 
 The bankruptcy court determined that the apparent withdrawal of Josephine Strangie’s counsel — five months before the 1996 default judgment was entered — had confounded any “actual litigation” of the corporate-veil-piercing issue, and alternatively that the order allowing Smith Barney’s motion for summary judgment did not qualify as a “final judgment.” As we agree with the latter ruling, we do not address the former.
 
 [3]
 

 Although the state court allowed the motion for summary judgment by margin endorsement in August 1996, there has
 
 *195
 
 been no showing that its endorsement was ever reduced to judgment.
 
 [4]
 
 Furthermore, the motion for summary judgment named only Josephine Strangie, who was but one of three defendants in the case. Smith Barney neither contends, nor has it demonstrated, that its claims against Mystic Valley and the Estate of Anthony Strangie were no longer pending, nor that Smith Barney ever sought to certify the interlocutory partial summary judgment against Josephine Strangie as “final,” pursuant to Mass. R. Civ. P. 54(b).
 
 [5]
 
 Thus, the state-court default judgment against Josephine Strangie presently remains nonappealable.
 

 Under Massachusetts law, collateral estoppel normally is not triggered by a nonappealable judgment.
 
 See Sena,
 
 629 N.E.2d at 992;
 
 Tausevich v. Board of Appeals of Stoughton,
 
 402 Mass. 146, 521 N.E.2d 385, 387 (1988) (holding that partial summary judgment “[not] entered under Mass. R. Civ. P. 54(b)” has no res judicata effect).
 
 [6]
 
 Since the state court judgment against Josephine was interlocutory,
 
 see
 
 Mass. R. Civ. P. 54(b) (“[T]he order or other form of decision is subject to revision at any time .... ”), the bankruptcy court correctly rejected Smith Barney’s motion
 
 in limine.
 

 [7]
 

 B.
 
 Piercing the Corporate Veil
 

 Next, Smith Barney argues that it was clear error for the bankruptcy court to reject its evidence of Josephine’s fraudulent intent and to refuse either to pierce the corporate veil or declare the judgment debt nondischargeable. We do not agree.
 

 First, Smith Barney acknowledged before the bankruptcy court that it filed its adversary proceeding based solely on its assumption that its pretrial motion
 
 in li-mine
 
 would prevail, and that the collateral estoppel doctrine would obviate the need to present evidence before the bankruptcy court that the Mystic Valley corporate veil should be pierced at Josephine’s expense. In other words, Smith Barney sought to capitalize on the partial summary judgment allowed by endorsement in the state court proceeding, even though the en
 
 *196
 
 dorsement resulted solely from Josephine’s procedural default, rather than from any ruling on the merits. Smith Barney thereby would be spared the difficult task of establishing that in these circumstances Josephine should be found personally liable for the Mystic Valley judgment debt. Thus, it is not surprising that after the court denied the
 
 in limine
 
 motion, Smith Barney managed only a lame attempt to demonstrate to the bankruptcy court that Josephine should be held personally liable.
 

 Second, Smith Barney appears to assume that any evidence that Josephine Strangie fraudulently misused the corporate form would serve not only to subject her to personal liability for Mystic Valley’s debts, but also render nondischargeable any debt she owed Smith Barney pursuant to Bankruptcy Code §§ 523(a)(2) (obtaining property by materially false statement in writing); (a)(4) (fraud); (a)(6) (willful or malicious injury). Since we affirm the bankruptcy court’s finding that Smith Barney failed to establish that it may pierce the corporate veil, there is no need to address its section 523(a) claims inasmuch as Josephine obviously has no need for a bankruptcy discharge in relation to obligations for which she was never liable.
 

 Finally, Smith Barney expressly endorsed the “corporate veil piercing” standards set out in
 
 My Bread Baking Co. v. Cumberland Farms, Inc.,
 
 353 Mass. 614, 233 N.E.2d 748 (1968): “A ... person controlling a corporation
 
 and directing, or participating actively
 
 in its operations may become subject to civil or criminal liability on principles of agency or of causation, ... where [the] corporation! ][was] formed, or availed of, to carry out the objectives and purposes of the ... persons
 
 controlling
 
 them.”
 
 Id.
 
 at 751 (emphasis added.) Essentially, Smith Barney’s theory was that the close relationship between Anthony and Josephine, and their persistent disregard of Mystic Valley’s corporate form, established that they jointly “use[d] ... the corporation in promoting fraud.”
 
 Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.,
 
 754 F.2d 10, 16 (1st Cir.1985).
 
 [8]
 

 Smith Barney sought to show that Anthony Strangie used Mystic Valley funds for personal purposes. Thus, as Anthony’s spouse, Josephine may well have derived coincidental personal benefit from some of those diversions. What Smith Barney failed to demonstrate, however, is that Josephine directly and knowingly participated in any alleged diversion. Rather, the only evidence Smith Barney adduced was that Josephine performed minor ministerial tasks, by occasionally driving her husband to the bank to make deposits in corporate accounts, and by filling out the date, payee name, and amount spaces on some corporate checks at Anthony’s specific direction. Moreover, she testified unequivocally and without evidentiary contradiction that she was never involved in or privy to the corporate business, which was handled by her husband on his own. Thus, Smith Barney’s citation to
 
 Pepsi-Cola Metro. Bottling Co.,
 
 754 F.2d 10, is unavailing. There the wife did more than passively receive joint benefit from the diversions effected by the husband. She
 
 signed
 
 corporate checks. So it fairly could be said that she actively diverted corporate funds to her personal use.
 
 See id.
 
 at 16. Josephine testified,
 
 in this case,
 
 without contradiction, that she signed no corporate checks.
 

 Ill
 

 CONCLUSION
 

 Accordingly, viewed in light of the entire record on appeal, we conclude that Smith Barney has not demonstrated “clear
 
 *197
 
 error” in the bankruptcy court’s determination that the corporate form should be respected.
 
 See Crane v. Green & Freedman Baking Co.,
 
 134 F.3d 17, 22 (1st Cir.1998) (noting that whether to pierce corporate veil is a factual issue, which turns on an examination of the totality of the circumstances).
 
 [9]
 
 As the factfinder, the bankruptcy court was entitled to make reasonable credibility determinations,
 
 see Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.),
 
 132 F.3d 104, 108 (1st Cir.1997), and “[w]here there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous,”
 
 Palmacci v. Umpierrez,
 
 121 F.3d 781, 790 (1st Cir.1997) (citation omitted).
 
 [10]
 

 Affirmed; costs to appellee.
 

 [1]
 

 .On appeal from the district court, we review the bankruptcy court’s conclusions of law
 
 de novo,
 
 and its factual findings for clear error.
 
 See Adams v. Coveney,
 
 162 F.3d 23, 25 (1st Cir.1998). Although the bankruptcy court's denial of a motion
 
 in limine
 
 is reviewed only for abuse of discretion,
 
 see JOM, Inc.
 
 v.
 
 Adell Plastics, Inc.,
 
 151 F.3d 15, 18 (1st Cir.1998), the application
 
 vel non
 
 of the collateral estop-pel doctrine presents a question of law, which we review
 
 de novo, see Keystone Shipping Co. v. New Engl. Power Co.,
 
 109 F.3d 46, 50 (1st Cir.1997).
 

 [2]
 

 . Whether a federal court is to accord collateral estoppel effect to a state court judgment is controlled by state law.
 
 See New Hampshire Motor Transp. Ass’n v. Town of Plaistow,
 
 67 F.3d 326, 328 (1st Cir.1995).
 

 [3]
 

 . We assume
 
 arguendo
 
 that the issue allegedly litigated in the state-court case was coterminous with those in the adversary proceeding. Thus, we do not decide whether the type or degree of fraud required to warrant disregarding the corporate form under Massachusetts law is the same as required to establish nondischargeability under Bankruptcy Code § 523.
 

 [4]
 

 . Smith Barney’s suggestion that there was insufficient time to request entry of judgment before Josephine filed her chapter 7 petition is predicated on a mistaken premise.
 
 See Elliott v. Papatones (In re
 
 Papatones), 143 F.3d 623, 625 (1st Cir.1998) (ministerial acts, such as docketing a previously announced state-court judgment, are not barred by the automatic stay);
 
 Soares v. Brockton Credit Union (In re
 
 Soares), 107 F.3d 969, 973-74 (1st Cir.1997) (same).
 

 [5]
 

 . Rule 54(b) provides:
 

 When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
 

 Mass. R. Civ. P. 54(b).
 
 See Shamley v. ITT Corp.,
 
 869 F.2d 167, 170 (2d Cir.1989) (examining federal analogue to Mass. R. Civ. P. 54(b) and explaining that the rule is properly used not only to allow immediate appeal, but to give res judicata effect to partial judgments).
 

 [6]
 

 . Federal and Massachusetts practice , are consonant in this respect.
 
 See, e.g., Knox v. Lederle Labs., 4
 
 F.3d 875, 880-81 (10th Cir.1993) (rejecting res judicata effect of summary judgment never reduced to Rule 54(b) "judgment”);
 
 Avondale Shipyards, Inc. v. Insured Lloyd’s,
 
 786 F.2d 1265, 1271 (5th Cir.1986);
 
 Alexander v. Chicago Park Dist.,
 
 773 F.2d 850, 854-55 (7th Cir.1985); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
 
 Federal Practice and Procedure
 
 § 4434 (1983).
 

 [7]
 

 . Smith Barney’s sole citation on this point — • to
 
 Stowe v. Bologna (In re
 
 Bologna), 206 B.R. 628, 631 (Bankr.D.Mass.1997) — is inapposite. Unlike Strangie, the debtor in
 
 Stowe conceded
 
 the finality of the prior judgment.
 
 Id.
 

 [8]
 

 . We note that several other fact-specific criteria may be important to the present inquiry, however, including “insufficient capitalization ..., nonobservance of corporate formalities, nonpayment of dividends, insolvency of the corporation at the time of the litigated transaction, siphoning of corporate funds by the dominant shareholders, nonfunctioning of officers and directors other than the shareholders, absence of corporate records, [and] use of the corporation for transactions of the dominant shareholders.”
 
 Id.
 

 [9]
 

 . The same deferential standard of review applies to the bankruptcy court findings in relation to Bankruptcy Code § 523.
 
 See Palmacci v. Umpietrez,
 
 121 F.3d 781, 790 (1st Cir.1997) ("The determination of whether [§ 523(a) ] scienter exists based on certain circumstantial facts must be treated merely as 'a permissible inference of fact ... and not a presumption of law.’ ”) (citation omitted).
 

 [10]
 

 . Finally, Smith Barney contends that the district court erred in refusing to penalize Josephine Strangle for various discovery violations, and, in particular, for her counsel's refusal to allow her to answer material questions put to her on deposition. The motion to compel was not denied on its merits, however, but for failure to include the necessary certification that Smith Barney previously had consulted with opposing counsel in a good-faith effort to resolve their discovery disputes.
 
 See
 
 Fed.R.Civ.P. 37(a)(2)(B).