CLAIRE M. FAY *vs.* FEDERAL NATIONAL MORTGAGE
ASSOCIATION & another.[1]

Middlesex. January 12, 1995. - March 23, 1995.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Estoppel. Judicial Estoppel. Practice, Civil,* Appeal. *Collateral Estoppel.
Judgment,* Preclusive effect.

Discussion of cases considering the equitable doctrine of judicial estoppel
or "preclusion of inconsistent positions." [787-788]
The doctrine of judicial estoppel was not applicable to a second cause of
action where the plaintiff had not successfully asserted an inconsistent
position in the prior proceeding. [787, 788]
Principles of issue preclusion operated to bar a plaintiff's claims arising out
of an alleged forgery of a deed by a certain person, where the same
issue of the forgery had been litigated in a previous action to which the
plaintiff was a party with a full and fair opportunity to litigate; the
issue had been decided against the plaintiff; the issue was essential to
the judgment; and a final judgment had been entered. [789-791]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 2, 1993.

The case was heard by *Thayer Fremont-Smith,* J., on a
motion for summary judgment.

The Supreme Judicial Court granted an application for di-
rect appellate review.

*Richard H. Gens* for the plaintiff.

*Gordon M. Orloff* for Federal National Mortgage
Association.

*Michael D. Lurie* for Triad Finance Corporation.

_____

[1]Triad Finance Corporation moved to intervene in January, 1994, and
joined the motion for summary judgment of Federal National Mortgage
Association. While the judge's memorandum of decision dated March 31,
1994, does not reflect such joinder, a motion to amend the judgment was
allowed and final judgment reflects judgment for both defendants.

NOLAN, J. The plaintiff appeals from a summary judgment in favor of the defendants. The defendants, Federal National Mortgage Association (Fannie Mae) and Triad Finance Corporation (Triad), hold mortgages on property located at 10 Prentiss Street in Cambridge (property). The plaintiff filed the present action seeking to enjoin Fannie Mae from foreclosing on the property and to set aside the defendants' mortgages on the basis that a deed in the chain of title to the property is forged. The judge granted summary judgment in favor of the defendants ruling that the plaintiff's claims were barred by the doctrine of judicial estoppel. We granted the plaintiff's application for direct appellate review, and now affirm.

We begin by setting out the facts of this and other related cases. On February 28, 1981, the plaintiff; her two sons, James Daniel Fay and Timothy J. Fay; and Edward Paul Silva created T.J. Realty Trust. Silva was designated as sole trustee, and the plaintiff's two sons were declared equal beneficiaries. The title to six properties, including 10 Prentiss Street, was conveyed to the trust, and the declaration of trust was duly recorded in the registry of deeds.

On the same day that the trust was established, the parties entered into a written side agreement which provided, in part, that the plaintiff would "consult with and direct the [t]rustee in the operation of [the trust] properties." The agreement also provided that "notwithstanding the terms of the recorded trust, the terms and conditions of this [a]greement shall control the operation of the [t]rust." This agreement was never recorded.

Approximately two years later, in a deed dated January 14, 1983, Silva purportedly conveyed the property to Richard E. Lenza. After obtaining title, Lenza gave Century Bank and Trust Company, Fannie Mae's predecessor, a first mortgage on the property. That mortgage was duly recorded in the registry of deeds and is currently being held by Fannie Mae. Several years later, Lenza granted to Triad a second mortgage on the property. This mortgage was also duly recorded. On September 1, 1988, Lenza conveyed the property

from himself individually to himself as trustee of the Prentiss Street Trust. Several months later Lenza was replaced as trustee by the plaintiff's son, James Daniel Fay.

*The Silva case.* In June, 1989, Silva, as trustee, commenced an action against Lenza, James Daniel Fay, and various lenders including Triad, seeking to invalidate the conveyance of the property from Silva to Lenza.[2] In his complaint, Silva alleged that his purported signature appearing on the deed was forged, and that the mortgages held by Triad and others were therefore invalid. During the course of the litigation, a settlement was proposed, but was rejected by Silva. Timothy J. Fay and James Daniel Fay, as beneficiaries of the T.J. Realty Trust, then removed Silva as trustee, named themselves as cotrustees, and accepted the settlement.

*The Bristol County case.* In October, 1990, approximately two and one-half years prior to commencement of the present action, the plaintiff commenced an action against Lenza, Timothy Fay, James Daniel Fay, Philip McCourt, Triad, and other lenders which claimed to hold mortgages on the property.[3] The plaintiff alleged that (1) James Daniel Fay and Timothy J. Fay breached the unrecorded side agreement by failing to consult the plaintiff before conveying or mortgaging the property; (2) Philip McCourt, an attorney, forged Silva's name on the deed to Lenza, which allowed the property fraudulently to be conveyed; (3) Lenza participated in the fraudulent conveyance of the property to himself; (4) Triad and the other lenders had knowledge and notice of the side agreement and thereby should be held liable for facilitating the breach of the agreement; and (5) all parties in the Silva case settlement, having knowledge of the side agreement, interfered with the plaintiff's rights under that agreement.

The judge granted summary judgment to Triad and the other lenders, ruling that there was no evidence to support the plaintiff's claim that the lenders knew or should have

---

[2]Fannie Mae was not named as a defendant in this action.

[3]Fannie Mae was not named as a defendant in this action either.

known of the existence of the side agreement giving the plaintiff an interest in the business of the trust. In relation to the claims brought against the other defendants, however, the judge denied the motion of summary judgment, ruling that several issues, including the legal effect of the agreement and the actual validity of the conveyances, needed to be resolved.

The plaintiff's remaining claims against Lenza, McCourt, James Daniel Fay, and Timothy J. Fay were tried to a jury. During the course of the litigation, the plaintiff alleged that the deed purporting to convey title to the property from Silva to Lenza was forged, and that Philip McCourt was responsible for the forgery.[4] At trial, the plaintiff called a handwriting expert and examined that expert regarding whether Silva had executed the deed. In addition, the plaintiff argued to the jury that the deed from Silva to Lenza was forged, and that this forgery constituted the basis for her claims that the defendants either breached or tortiously interfered with the agreement. The jury returned a verdict against the plaintiff on all the claims, and the plaintiff did not appeal.

*The present action.* On January 29, 1993, Fannie Mae held a foreclosure sale of the property, at which the plaintiff was the high bidder. After executing a memorandum of sale by which she agreed to purchase the property for $175,000, the plaintiff refused to close and filed the present action seeking to enjoin Fannie Mae from foreclosing on the property.[5]

---

[4]In the "Plaintiff's Opposition to New England Federal Savings Bank and Cambridgeport Savings Banks' Motion for Entry of Final Judgment," the plaintiff stated that she would "(*without a doubt*) . . . prove that all four deeds to the properties in question *are forged* . . . [and] that the titles to the properties are invalid" (emphasis in original). The plaintiff also stated: "The evidence to be given to the Jury will prove that Philip B. McCourt, Jr., Atty. forged all four deeds, notarizing his forgery and deeding the properties to Richard E. Lenza, Esq. . . . ."

[5]In response to the plaintiff's claim, Fannie Mae filed a counterclaim seeking an injunction ordering the plaintiff to refrain from interfering with Fannie Mae's conveyance of the property. Fannie Mae also sought specific performance by the plaintiff of her obligation to purchase the property under the memorandum of sale, or alternatively, damages for breach of contract.

In her complaint, the plaintiff also sought to invalidate the defendants' mortgages alleging that a deed in the chain of title to the property was forged.[6]

*The Haley case.* During the course of the present action, the plaintiff became embroiled in yet another lawsuit brought by one Alan Haley. As part of that action, the plaintiff, as defendant therein, filed with the court a motion asserting that, by virtue of her beneficial interest in the Prentiss Street Trust, she was the owner of the premises at 10 Prentiss Street. In support of her motion, the plaintiff filed, among other documents, Lenza's deed from himself individually to himself as trustee of the Prentiss Street Trust, the documents by which Lenza was replaced by James Daniel Fay, and the schedule of beneficiaries of that trust.[7] In order to prove ownership of the property, the plaintiff necessarily relied on the validity of the deed that she currently claims is forged.

The judge denied the plaintiff's motion and the case was tried without a jury. On September 14, 1993, judgment was entered without prejudice against the plaintiff after the judge found that in 1993 the plaintiff had attempted to establish her residence at 10 Prentiss Street in order to claim the property as an "owner-occupied" building, but that this attempt failed when the Cambridge rent control board concluded that she neither owned nor occupied the property. The judge then enjoined the plaintiff from interfering with the tenants' occupancy of the building unless or until she could prove ownership of the property.

After learning of the plaintiff's assertions in the Haley case, Fannie Mae moved for summary judgment in the present action, arguing that the plaintiff was barred by the doctrine of judicial estoppel from asserting that the deed from

---

[6]The plaintiff challenges the same deed that she had alleged was forged in the Bristol case: the deed from Silva to Lenza purportedly conveying title to the property.

[7]According to this schedule of beneficiaries, the plaintiff was a 51% beneficiary of the Prentiss Street Trust as of May, 1993.

Silva to Lenza was invalid.[8] The judge granted the motion ruling that the plaintiff was judicially estopped from asserting inconsistent positions in separate court proceedings. See note 1, *supra.*

1. *Judicial estoppel.* The plaintiff contends that the judge erred in applying the doctrine of judicial estoppel because (1) the Haley case did not involve the same parties or their privies, and (2) the plaintiff was not successful in asserting her position in the prior proceeding. The defendants, on the other hand, argue that the doctrine should be employed whenever a litigant is "playing fast and loose with the courts." *Patriot Cinemas, Inc.* v. *General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir. 1987), quoting *Scarano* v. *Central R.R.*, 203 F.2d 510, 513 (3d Cir. 1953).

Judicial estoppel, or "preclusion of inconsistent positions," is an equitable doctrine which precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another. *Patriot Cinemas, Inc.* v. *General Cinema Corp., supra.* The specific requirements of the doctrine are rather vague and vary among the States and the United States Courts of Appeals. *Id.* See 1B Moore's Federal Practice par. 0.405[8] (2d ed. 1994); Boyers, Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel, 80 Nw. U.L. Rev. 1244, 1258 (1986). Some courts have refused to apply the doctrine unless the court in the prior proceeding adopted the inconsistent assertion in some manner. See *Astor Chauffeured Limousine Co.* v. *Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1547-1548 (7th Cir. 1990); *Edwards* v. *Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982); *Allen* v. *Zurich Ins. Co.*, 667 F.2d 1162, 1167 (4th Cir. 1982); *Bates* v. *Long Island R.R.*, 997 F.2d 1028, 1038 (2d Cir.), cert. denied, 510 U.S. 992 (1993); *United States ex rel. Am. Bank* v. *C.I.T. Constr. Inc. of Tex.*, 944 F.2d 253, 258-259 (5th Cir. 1991). Other courts have applied the doctrine whenever it is determined that a

---

[8]Triad also argued that the plaintiff's claims against it were barred by the doctrine of claim preclusion.

litigant is playing "fast and loose" with the courts. See, e.g., *AFN, Inc.* v. *Schlott, Inc.*, 798 F. Supp. 219, 227 (D.N.J. 1992). Still, other courts have rejected outright the doctrine's application. See *United Mine Workers 1974 Pension* v. *Pittston Co.*, 984 F.2d 469, 477 (D.C. Cir.), cert. denied sub nom. *Rawl Sales & Processing Co.* v. *United Mine Workers 1974 Pension Trust*, 509 U.S. 924, and cert. denied sub nom. *Pittston Co.* v. *United Mine Workers 1974 Pension Trust*, 509 U.S. 924 (1993); *United States* v. *49.01 Acres of Land*, 802 F.2d 387, 390 (10th Cir. 1986).

Massachusetts cases have considered whether prior conduct in judicial proceedings, usually involving the same parties, estopped a party from advancing a particular position. See, e.g., *Brown* v. *Quinn*, 406 Mass. 641, 646 (1990); *Gordon* v. *Lewitsky*, 333 Mass. 379, 381 (1955); *Pemstein* v. *Stimpson*, 36 Mass. App. Ct. 283, 293 (1994); *Correia* v. *DeSimone*, 34 Mass. App. Ct. 601, 603-604 (1993); *Larson* v. *Larson*, 30 Mass. App. Ct. 418, 427-428 (1991); *Brown* v. *Gerstein*, 17 Mass. App. Ct. 558, 568-569 n.19 (1984). We have never defined, however, the specific requirements of judicial estoppel.

Suffice it to say that we would apply the doctrine of judicial estoppel at least where a party had *successfully* asserted his or her inconsistent position in a previous proceeding, and that neither privity nor reliance are essential requirements. In the present case, judicial estoppel on the above standard has not been satisfied since the plaintiff did not successfully assert her inconsistent position in the prior proceeding.[9] We need not consider in what other circumstances we would apply judicial estoppel because issue preclusion bars the plaintiff's claim.[10]

---

[9]In the Haley case, the plaintiff filed a motion to prove ownership of the property. In an attempt to prove her ownership, the plaintiff relied on the very deed that she now claims is invalid. The judge denied the plaintiff's motion, and enjoined the plaintiff from interfering with the tenants' occupancy until she could prove ownership of the property.

[10]We note that the imposition of judicial estoppel does not conflict with Mass. R. Civ. P. 8 (e) (2), 365 Mass. 749 (1974), which provides that in a

2. *Issue preclusion.* The defendants argue that, even if the judge erred in granting the summary judgment motion on the basis of judicial estoppel, the judgment should be affirmed because the plaintiff's claims are barred by the doctrine of issue preclusion.[11] "It is well established that, on appeal, we may consider any ground apparent on the record that supports the result reached in the lower court."[12] *Gabbidon v. King*, 414 Mass. 685, 686 (1993), and cases cited.

The defendants contend that in the Bristol County case, the issue of forgery was fully tried before a jury, and thus, the plaintiff is precluded from retrying this issue. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Fireside Motors, Inc.* v. *Nissan Motor Corp. in U.S.A.*, 395 Mass. 366, 372 (1985), quoting Restatement (Second) of Judgments § 27 (1982). "In certain circumstances, mutuality of parties is not required. A nonparty may use collateral estoppel defensively against a party to the original action who had a full and fair opportunity to litigate the issues in question." *Martin* v. *Ring*, 401 Mass.

---

.pleading, "[a] party may . . . state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds." Rule 8 (e) (2) applies to inconsistent claims made within a single proceeding. Judicial estoppel, on the other hand, applies when a litigant has asserted inconsistent positions on the same legal point in separate proceedings or in successive stages of the same litigation.

[11]Triad also argues the plaintiff's claims as against it are barred by the doctrine of claim preclusion.

[12]Earlier in the proceedings, Fannie Mae made an initial motion for summary judgment based on, among other things, issue preclusion. The judge denied the motion. Fannie Mae's failure to take a cross appeal from that ruling does not preclude it from raising that argument here. Although "failure to take a cross appeal precludes a party from obtaining a judgment more favorable to it than the judgment entered below," *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 43 n.5 (1977), Fannie Mae does not seek a judgment more favorable than that entered below. It merely seeks affirmance of the entry of summary judgment against the plaintiff.

59, 61 (1987). See Restatement (Second) of Judgments § 29 (1982).

Before applying collateral estoppel, we must affirmatively answer the following questions: "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the [estoppel] is asserted a party or in privity with a party to the prior adjudication?" *Massachusetts Property Ins. Underwriting Ass'n* v. *Norrington,* 395 Mass. 751, 753 (1985), quoting *Bernhard* v. *Bank of Am. Nat'l Trust & Sav. Ass'n,* 19 Cal. 2d 807, 813 (1942). The final question we must affirmatively answer is whether the issue decided in the prior adjudication was essential to the earlier judgment. *Bannister* v. *Commonwealth,* 411 Mass. 130, 131 (1991).

One of the issues decided in the Bristol County case was whether Philip McCourt forged the deed purporting to convey the property from Silva to Lenza. The plaintiff was a party to that action, and had a full and fair opportunity to litigate the issue. Furthermore, the issue was decided against the plaintiff, and there was a final judgment on the merits. Finally, proof of forgery was essential to the judgment.[13] The only question left to consider, then, is whether the issue litigated in the Bristol County case is the same issue presented here.

The plaintiff contends that the issues in the two cases are not identical because a "finding that [McCourt] did not commit a forgery [is] not a finding that no forgery was committed." Despite the plaintiff's attempts to recharacterize the issue, the record clearly establishes that the plaintiff's claims in the present case rest on the assertion that the deed is forged, and that Philip McCourt is the person responsible for the forgery. In the plaintiff's opposition to the motion for summary judgment, the plaintiff alleged that:

---

[13]The plaintiff concedes in her reply brief that the issue of forgery was submitted to and decided by the jury, and that proof of forgery was essential to the tortious interference claim against McCourt.

"The property at 10 Prentiss Street, Cambridge, Ma. conveyed to Lenza by Edward Paul Silva, Trustee of T. J. Realty Trust is a forged deed. Philip B. McCourt, Atty. forged the name of Edward P. Silva on the deed, notarized his forgery and deeded the property to Lenza."

Furthermore, in a deposition dated January 12, 1994, the plaintiff stated that it was her position that Philip McCourt forged the deed.

We conclude that the plaintiff's claims are barred by the doctrine of issue preclusion. The issue of forgery was decided against the plaintiff in the Bristol County case. The plaintiff was a party to that action, she had a full and fair opportunity to litigate the issue, the issue was essential to the judgment, and there was a final judgment on the merits. The summary judgment is affirmed.

*So ordered.*