Quinlan, J.
INTRODUCTION
This matter is before the Court on the plaintiffs motion for summary judgment pursuant to Mass.R.Civ.P. 56. The plaintiff seeks a declaration that it has lawfully rescinded a professional liability insurance policy issued to the defendants, Robert S. Lappin and Stanley A. Brooks, or in the alternative, a declaration that the policy does not cover the underlying malpractice claim asserted by the defendants, the Wallaces. The defendants contend that there are genuine issues of material fact in dispute which preclude the entry of summary judgment. For the reasons discussed below, the plaintiffs motion is DENIED.
BACKGROUND
The pleadings, affidavits and deposition testimony, considered in the light most favorable to the defendants as nonmoving party, present the following facts. In 1995, the defendants, Robert S. Lappin (“Lappin”) and Stanley A. Brooks (“Brooks”) were practicing law under the name “Lappin, Rosen, Goldberg & Brooks.”[2] Lappin was partially retired and spent several months of the year in Florida. Lappin and Brooks were covered by a professional liability policy through the Boston Bar Association (“BBA”) provided by Home Insurance Company (“Home”) from May 10, 1994 through May 10, 1995. Sometime prior to renewal, Chicago Insurance (“Chicago”) replaced Home as the carrier for the BBA. Chicago required renewal applicants to complete a Simplified Renewal Application (“SRA”) which contained four questions calling for “yes” or “no” answers. On May 4, 1995, Brooks and Lappin submitted an SRA to Chicago. They answered all of the questions asked in the negative including: “Have any new claims or circumstances which may result in a claim arisen in the past policy period?” Chicago approved the policy for ttie period from May 10, 1995 through May 10, 1996.[3]
During the policy period, several malpractice complaints were filed against Lappin. On January 22, 1996, the defendants, the Wallaces, sued Lappin to recover monies stolen by Lappin’s secretary and legal assistant, Linda Otero Ortstein (“Ortstein”).[4] In November 1995, Seymour March sued Lappin alleging damages as a result of a fraudulent mortgage refinancing scheme conducted by Ortstein. In February 1996, Wainwright Bank made a demand against Lappin for damages resulting from his alleged negligence in a real estate transaction. In January 1995, Susan Campbell filed an amended complaint against Lappin with the BBO regarding, among other things, inadequacies in the probating of her mother’s estate.
On or about February 23, 1996, Chicago filed this action to rescind the policy. In August 1996, Chicago moved for summary judgment, but withdrew its motion on or about January 23, 1997.
DISCUSSION
This Court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact in order to defeat the motion. Pederson, supra at 17.
“In order to void or rescind a policy of insurance or deny a claim based upon misrepresentations in an application for insurance, the insurer must demonstrate that the misrepresentations were made with intent to deceive or that they increased the risk of loss to the insurer. Northwestern Mut. Life Ins.. Co. v. Iannacchino, 950 F.Sup. 28 (D.Mass. 1997); G.L.c. 175, §186.[5] Chicago does not contend that Lappin or Brooks made intentional misrepresentations in the SRA. Therefore, Chicago may void or rescind its policy and/or deny a claim if Lappin or Brooks made an innocent misrepresentation of a material fact, and the disclosure of the truth would have influenced the underwriter’s judgment in making the insurance contract, in estimating the degree and character of the risk, or in fixing the premium rate. Id.; see Employers’ Liability Assurance, Ltd. v. Vella, 366 Mass. 651, 655 (1975). If an insured falsely states a fact that would increase the premium, the misrepresentation is material. Barnstable County Insurance Co. v. Gale, 425 Mass. 126, 128 (1997). Under Massachusetts law, whether a misstatement in an application for insurance increased the risk of loss and was, therefore, material is ordinarily a question of fact on which insurer bears burden of proof. McLean Hosp. Corp. v. Lasher, 819 F.Sup. 110 (D.Mass. 1993); Hanover Ins. Co. v. Leeds, 42 Mass.App.Ct. 54 (1997).
*329 The Court first considers whether Lappin and Brooks made a misrepresentation when they answered “No” to the question: “[H]ave any new claims or circumstances which may result in a claim arisen in the past policy period?” Chicago contends that Lappin and/or Brooks had knowledge of circumstances which might result in a claim on or before May 4, 1995 when they submitted the SRA.[6] These circumstances involve claims eventually asserted against Lappin by the Wallaces, Susan Campbell, Wainwright Bank, and Seymour March.
In reference to the Wallace matter, Chicago contends that Lappin knew monies were missing from the Wallace’s PaineWebber account in early 1995. In support of its position, Chicago relies upon an affidavit dated November 29, 1995 which Lappin filed in connection with a civil action he commenced as trustee to recover the stolen money from Ortstein and others. In his affidavit, Lappin states “[I]n early 1995, I discovered that funds had been withdrawn from Merrill Lynch and Painewebber [sic] without my knowledge, consent, or authorization and I confronted Ortstein.” Lappin does not dispute that the quoted language appears in his 1995 affidavit. Lappin contends that he had no knowledge of the thefts until July 11, 1995. In early 1995, Lappin stopped receiving the monthly statements in Florida. Ortstein explained to him that there was trouble with the mail. After several more months had elapsed, in July 1995, Lappin finally received the statements and confronted Ortstein about the unauthorized withdrawals. Lappin explains the purported inconsistency in his 1995 affidavit by stating that the qualifying language “after several months had elapsed” was inadvertently dropped from his 1995 affidavit, filed in a lawsuit in which the issue was establishing the existence of the thefts, not the precise date of discovery of the thefts. Chicago argues that Lappin’s affidavits present the type of inconsistent statements which should be barred by the doctrine of judicial estoppel.
“Judicial estoppel, or ‘preclusion of inconsistent positions,’ is an equitable doctrine which precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." Fay v. Federal National Mortgage Association, 419 Mass. 782, 787 (1995). Massachusetts courts will apply the doctrine of judicial estoppel at least where a party had successfully asserted his or her inconsistent position in a previous proceeding, and neither privity nor reliance are essential requirements. Id. at 788. See Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 543 (plaintiff estopped from claiming qualified handicap after claiming permanent and total disability when filing for benefits). The circumstances of this case do not warrant applying judicial estoppel. Chicago has not shown that the two statements are inconsistent as a matter of law or that Lappin successfully asserted a different position in a previous proceeding. Chicago is free to explore any inconsistencies in Lappin’s affidavit testimony on cross examination.
In reference to the Wallace accounts at Oppenheimer, Chicago contends that Lappin knew monies intended for tax payments had been diverted and confronted Ortstein about the missing funds in January 1995. Chicago again relies on Lappin’s 1995 affidavit in support of its position. In his 1995 affidavit, Lappin states that it was his usual practice to have Oppenheimer send checks to Lappin’s office made payable directly to the taxing authority. In subsequent testimony, Lappin states that although it was his usual practice to have the checks made payable to the taxing authority, a further review of his records has revealed that he occasionally had Oppenheimer transfer money to his client funds account on which the checks were then drawn. When Lappin was notified in early 1995 by the Wallaces about the delinquent tax notices they received, he confronted Ortstein who told him that the checks must have been lost in the mail and that there were sufficient funds in the client account to issue replacement checks which she would do. Therefore, Lappin contends that he did not know about the diversion of the Oppenheimer funds by Ortstein until September 1995.
Chicago again urges this Court to apply the doctrine of judicial estoppel to bar Lappin’s subsequent testimony about the Oppenheimer funds. The Court rules that there are material facts in dispute which should be determined by a fact finder and not by applying the doctrine of judicial estoppel.
In reference to the Seymour March (“March”) matter, Chicago contends that Lappin knew in early 1995 that March had received foreclosure notices on his condominium which was allegedly refinanced by Ortstein. Chicago relies on a facsimile from March to Lappin dated February 12, 1995 informing Lappin of the foreclosure notices. Lappin contends that he was in Florida on this date and denies receiving the fax. Whether or not Lappin received this fax creates a genuine issue of material fact in dispute.
In reference to the Susan Campbell (“Campbell”) matter,' Chicago contends that Lappin knew prior to submitting the SRA that Campbell had lodged a complaint against him with the BBO alleging problems with the probating of her mother’s estate, a fee dispute,[7] and title problems regarding property at 369 Beacon Street. Lappin admits probating the estate of Betty Campbell which consisted of two pieces of property, including 369 Beacon Street. Lappin denies representing Susan Campbell in regard to obtaining a mortgage on 369 Beacon Street, but states that he asked Brooks to investigate and correct any title problems for Campbell because she had previously been a client. According to Brooks, on or about May 2, 1995, he sent Campbell’s new attorney several documents to be executed by Campbell clarifying title to 369 *330 Beacon Street. These documents were executed and recorded on May 16, 1995. Therefore, Brooks and Lappin contend that the only matter unresolved as of the time they submitted the SRA, was an outstanding fee dispute.
In reference to the Wainwright Bank matters, Chicago contends that prior to May 4, 1995, Brooks knew that there were title problems regarding property at 369 Beacon Street and 59 Commonwealth Ave. Brooks determined that the mortgage on 59 Commonwealth Avenue with respect to Wainwright was not recorded. Brooks recorded the mortgage on April 14, 1995. Lappin and Brooks contend that all parties involved in the transactions agreed that all title problems relating to the properties had been or would shortly be cleared up when they submitted the SRA.
Chicago contends that the SRA called for disclosure by Lappin and Brooks of information regarding Campbell’s BBO complaint and fee dispute, and title problems with Wainwright Bank. Lappin and Brooks contend that they were required to inform Chicago only about facts which they believed in the exercise of their reasonable judgment might result in a claim against them. Lappin and Brooks did not report the fee dispute or the BBO complaint because these are not the 1ype of matters which could result in malpractice claim. Moreover, they did not report the title problems with Wainwright Bank because it was their opinion that they had been or would shortly be cleared up.
It is undisputed that the SRA contained only four questions to be answered by applicants including “[H]ave any new claims or circumstances which may result in a claim arisen in the past policy period?” Chicago contends that this question was meant to elicit whether any significant changes had occurred over the preceding policy period by a purely objective standard taking no account of the insured’s state of mind in answering the question. Lappin and Brooks contend that they were required to inform Chicago only about facts which they believed might result in claims against them. The Court rules that the above question in the SRA cannot be construed as calling for more than an opinion, or a statement to the best of the applicant’s knowledge and belief." Rappe v. Metropolitan Life Ins. Co., 320 Mass. 376, 380 (1946). As a general rule, a writing is construed against the author of the doubtful language. Merrimack Valley National Bank v. Bird, 372 Mass. 721, 724 (1977), and cases cited. The author of the ambiguous term is held to any reasonable interpretation attributed to that term which is relied on by the other party. Id.
Accordingly, the Court rules that there are genuine issues of material fact in dispute whether the BBO complaint, fee dispute, and Wainwright title problems were called for by the SRA. There are also issues of fact whether when Lappin and Brooks submitted the SRA they were aware of circumstances that may have resulted in claims by the Wallaces and Seymour March which preclude the entry of summary judgment on Count I. For this reason, the Court will not reach the next issue whether the misrepresentation was material.
In Counts II and III of its complaint, Chicago contends in the alternative, that even if the policy is not rescinded, the Wallaces’ claim would not be covered because of the language in the policy requiring that: “the Named Insured, any partner, shareholder, employee . . . had no reasonable basis to believe that the insured had breached a professional duty or to foresee that a Claim would be made against the Insured.”
As discussed above, since there are genuine issues of material fact in dispute regarding what information Lappin and Brooks knew when they submitted the SRA, the Court cannot make a determination as a matter of law whether Lappin and Brooks knew or should have known that they had breached a professional duty or should have foreseen claims being made against them, which precludes the entry of summary judgment on Counts II and III.
ORDER
It is therefore ORDERED that the plaintiffs motion for summary judgment be DENIED.

Lappin and Brooks contend that they were sole proprietors. The Wallaces contend that Lappin and Brooks held themselves out as partners.

he parties do not dispute the policy period, but they do dispute when the policy was activated. Lappin and Brooks contend that the policy was in full effect as of May 10, 1995. Chicago contends that the policy was not activated until July 20, 1995.

In their complaint, the Wallaces allege that their losses were caused by Lappin’s negligence and breaches of fiduciary duty as trustee and attorney. The Wallaces also contend that Brooks is liable for any judgment they may recover against Lappin because he was or held himself out to be his partner.

G.L.c. 175, 186 provides:
No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss.

Chicago also contends that Lappin and Brooks had a duty to supplement their application with the information known to them as of July 1995, because the policy was not “activated” until July 20, 1995. There are genuine issues of material fact in dispute regarding the activation date of the policy. Therefore, for purposes of this motion, the Court will address the facts known to Brooks and Lappin as of May 4, 1995, the undisputed date on which the SRA was signed.

Ms. Campbell alleged that the $15,000.00 fee which Lappin charged to her mother’s estate was excessive.