Gershengorn, J.
The defendant/cross-claim plain-tiffT.R. White Co., Inc. (“T.R. White”), has brought this present action against defendant/cross-claim defendant, Constructions Collaborative, Inc. (“CCI”), on Count III of T.R. White’s cross claim. Count III alleges that CCI failed to obtain liability insurance; thereby, breaching their subcontract. CCI contends that there was no contract requiring them to obtain liability insurance, and alternatively, if a contract did indeed exist that it was void pursuant to G.L.c. 149, 29C. For the foregoing reasons, T.R. White’s motion for partial summary judgment is ALLOWED.

BACKGROUND

The undisputed facts are as follows. T.R. White was the general contractor of a construction project of a Crate & Barrel store at 777 Boylston Street in Boston (“the proj ect”). CCI was the subcontractor hired by T.R. White to install metal paneling around the interior and exterior of the store entrance. On November 19, 1999, the plaintiff, Alan Coscia (“Coscia”), was an employee with NER Construction Management Corporation, a masonry subcontractor hired by T.R. White. Coscia was installing or grouting pavers in the sidewalk in the front of the store when a CCI employee who was installing metal paneling and was positioned on a six-foot high Baker staging, dropped a crowbar that bounced off the pavement and struck Coscia above his right eye. Coscia has brought an action against T.R. White and CCI to recover for his personal injuries. T.R. White subsequently brought this action against CCI after learning that CCI did not purchase liability insurance as agreed upon in their subcontract (“the Agreement”), dated October 22, 1999.
As part of the Agreement, T.R. White and CCI agreed to an indemnification provision and an insurance and bonds provision. The indemnification provision as outlined in section 4.61 stated that CCI: “shall indemnify and hold harmless [T.R. White] from and against claims arising out of or resulting from performance of [CCI’s] work . . . provided that any such claim ... is attributable to bodily injuiy . .. but only to the extent caused by the negligent acts or omissions of [CCI].” The insurance and bonds provision, section 13.1, provided that:
The subcontractor [CCI] shall purchase and maintain insurance of the following types of coverage and limits of liability:
Crate & Barrel, T.R. White & Back Bay Restruant [sic] Group as additional insured.
Workers’ CompensationStatutoiy
Liability$2 million
CCI provided T.R. White with a certificate of insurance identifying T.R. White as a certificate holder on CCI’s liability insurance policy. The certificate of insurance that was issued was for information only and did not confer any rights upon T.R. White. CCI never named T.R. White as an additional insured on its liability insurance policy.
Three versions of the Agreement have been attached as exhibits. On October 22, 1999, T.R. White’s project manager, Mark Lootz (“Lootz”) entered into negotiations with CCI’s president, Clark Chase IV (“Chase”). Lootz prepared the first version of the Agreement and sent it to CCI. In this version the insurance provision only provided that CCI obtain liability insurance for T.R. White, but did not state the specific type of coverage and liability limits. The parties did not sign the first version. CCI then prepared the second version requesting certain job-specific changes and specifying the type and amount of insurance it agreed to obtain for T.R. White’s benefit.[1] In this version, CCI agreed to obtain workers’ compensation and two million dollars in liability insurance.[2] Chase, on behalf of CCI, signed this version and sent it to T.R. White. T.R. White then made certain handwritten changes to the second version; thereby creating the third version of the Agreement. The modifications concerned the “Substantial Completion Date” and calculating the “Substantial Sum.” None of these changés submitted by T.R. White affected the insurance provision. T.R. White did not sign or return the third version to CCI. CCI commenced work and received payments on the project without receiving the final version of the Agreement.
On November 19, 1999, CCI filed with the Suffolk County Registry of Deeds a Notice of Contract. The Notice of Contract acknowledged the existence of the Agreement dated October 22, 1999, between T.R. White and CCI, in which the contract price was for $92,000, and CCI had received payment in the amount of $25,000. On June 1, 2000, CCI filed suit against T.R. White in Boston Municipal Court alleging that T.R. White failed to remit payments due pursuant to the Agreement entered into on October 22, 1999.

DISCUSSION

This court grants summary judgment where there are no genuine issues of material facts and where the summary judgment record entitles the moving party to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden by either submitting affirmative evidence that negates an essential element of the opposing parly’s case or by demonstrating that the opposing party has no reason *630 able expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motor Corp., 410 Mass. 706, 716 (1991).
I. The Agreement
The issue before this court is whether the Agreement is a binding contract. It is a well settled principle of contract law that a contract is enforceable when the parties agree to the material terms and intend to be bound by that agreement. See Situation Mgmt. Sys., Inc. v. Malouf Inc., 430 Mass. 875, 878 (2000); McCarthy v. Tobin, 429 Mass. 84, 87 (1999) (“The controlling factor is the intention of the parties”). The material terms do not need to be “precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract.” Hunneman Real Estate Corp. v. Norwood Realty, Inc., 54 Mass.App.Ct. 416, 421 (2002), quoting Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. at 878. In this matter, T.R White and CCI agreed on all material terms, except for the Substantial Completion Date that was outlined in the Agreement. More importantly, T.R White and CCI agreed upon the terms of the insurance provision at issue. In the first version of the Agreement, T.R White left the liability amount blank so CCI could provide the amount. In the second version of the Agreement, CCI entered the liability amount for two million dollars and signed the Agreement. Therefore, it intended to be bound by the Agreement.
Moreover, even after the three versions of the Agreement had been drafted, there continued to be many incidents which reflected that CCI understood and intended to be bound by the Agreement. See Tiffany v. Sturbridge Camping Club, Inc., 32 Mass.App.Ct. 173, 175 n.4 (1992), quoting Pittsfield & N. Adams R.R. v. Boston & Albany R.R., 260 Mass. 390, 398 (1927) (‘There is no surer way to find out what the parties meant, than to see what they have done”). First, CCI began to perform and was paid the sum of $92,871 by T.R. White pursuant to the Agreement. See Orlando v. Boston Edison Co., No. 96-3527, 1998 Mass.Super. LEXIS 665, at *9 (Dec. 30, 1998) (Fabricant, J.) (“It is difficult to imagine conduct more indicative of a contract than performance and billing.”), citing Polaroid v. Rollins Environmental Services, 416 Mass. 684, 690-91 (1993). Second, on November 19, 1999, CCI filed with the Registry of Deeds a Notice of Contract regarding the Agreement. Finally, on June 1, 2000, CCI filed a suit in Boston Municipal Court against T.R. White alleging a breach of the Agreement.
CCI’s argument that a contract does not exist because T.R. White never signed or returned the final version of the Agreement to CCI fails because whether a contract was properly executed does not make a contract non-existent; rather, courts focus on whether the parties agreed to the material terms and intended to be bound by the contract. See Novel Iron Works, Inc. v. Wexler Construction Co., Inc., 26 Mass.App.Ct. 401, 407-08 (1988) (enforcing terms of unexecuted written contract). Therefore, this court concludes that the parties entered into a binding contract.
Since a binding contract exists, this court must now determine whether CCI breached the contract by failing to obtain liability insurance. A court should interpret a contract “so as to make it a valid and enforceable undertaking rather than one of no force and effect.” Finn v. McNeil, 23 Mass.App.Ct. 367, 372 (1987), quoting Shayeb v. Holland, 321 Mass. 429, 432 (1947). When the terms of a contract are clear and unambiguous the contract will be enforced according to its terms. See Mejia v. American Cas. Co., 55 Mass.App.Ct. 461, 465 (2002). In this matter, Section 13.1 specifically states that CCI is to purchase and maintain liability insurance in the amount of two million dollars for the benefit of T.R. White. This provision is clear and unambiguous. Therefore, CCI breached the Agreement by failing to obtain liability insurance in the amount of two million dollars.
CCI asserts that even if this court concludes that CCI breached the contract, T.R. White is still precluded from being awarded summary judgment because T.R. White would not have suffered any damages. CCI supports this argument with reference to T.R. White’s own insurance which would have covered any litigation costs. CCI’s conclusion is incorrect. In a breach of contract case, the injured party should be put in the position it would have been in had the contract been performed. See Williams v. B&K Medical Systems, Inc., 49 Mass.App.Ct. 563, 571 (2000). In this instance, if CCI had obtained the two million dollar liability insurance, T.R. White would not have had to assume the cost of its own defense. Accordingly, T.R. White has suffered damages resulting from CCI’s breach of the Agreement.
II. G.L.c. 149, 29C
CCI contends that if the Agreement is a binding contract, then the insurance provision is void pursuant to G.L.c. 149, 29C. According to G.L.c. 149, 29C, “(a]ny provision for or in connection with a contract for construction . . . which requires a subcontractor to indemnify any party for injury to persons or damage to property not caused by the subcontractor or its employees, agents or subcontractors, shall be void.” CCI argues that the insurance provision is in essence an indemnification provision. This court disagrees.
First, CCI’s attempt to analogize a liability insurance provision as similar to an indemnification provision is unfounded. See Johnson v. Modern Continental Const. Co., Inc., 49 Mass.App.Ct. 545, 548 (2000) (“We do not consider coverage questions under an insurance contract analogous to coverage under an indemnity provision of a construction contract”). When analyzing statutes courts must consider the statute’s plain language. See MacKay v. Contributory Retirement Appeal Bd., 56 Mass.App.Ct. 924, 926 (2002). General Laws chapter 149, Section 29C clearly states “(a]ny *631 provision . . . which requires a subcontractor to indemnify . . . for injury to persons . . . not caused by the subcontractor . . . shall be void.” (Emphasis added.) The statute does not address an insurance policy as a form of indemnification, and it can only be assumed that if the Legislature intended for insurance policies to be included it would have said so. See Callahan v. A.J. Welch Equipment Corp. 36 Mass.App.Ct. 608, 612 (1994). Furthermore, the purpose of having subcontractor’s insurance name general contractors as “additional insured” is the strong likelihood that the general contractor would be a parly in a negligence action. See TransAmerica Ins. Group v. Turner Const. Co., 33 Mass.App.Ct. 446, 450 (1992). For these reasons, courts have declined to apply an insurance provision to this statute. See Johnson, 49 Mass.App.Ct. at 548; Franklin v. General Elec. Co. et al., No. 95-1079, 1997 Mass.Super. LEXIS 343, at * 10, 7 Mass. L. Rptr. 116 (June 1997) (Fremont-Smith, J.) (holding that naming plaintiffs as additional insureds, “raised no logical inference that an indemnity agreement between the parties was intended”).
Furthermore, the Agreement contains a separate indemnification provision and the language of the provision does not offend G.L.c. 149, 29C. This court has not been asked, nor will it decide, whether Coscia’s injuries fall within this provision. However, for purposes of determining whether the contract is valid, the court concludes that the indemnification provision is proper and does not make the contract void.
HI. Judicial Estoppel
T.R. White’s final argument that the contract is binding is based upon a judicial estoppel argument. Even though this court has concluded that a binding contract exists between the parties and that the insurance provision does not fall under G.L.c. 149, 29C, it will still address this issue. Judicial estoppel precludes a party from taking inconsistent positions in separate actions. See Fay v. Federal Nat’l Mortgage Ass’n, 419 Mass. 782, 787 (1995). Judicial estoppel only applies where a party had successfully asserted its position in a prior proceeding. See id.
In this matter, T.R. White argues that because CCI alleges in its complaint, which is presently before the Boston Municipal Court, that T.R. White breached the Agreement that CCI is estopped from asserting that a contract does not exist. While CCI’s admission of a contract in its complaint provides evidence of its intent to be bound by the Agreement, a judicial estoppel argument is without merit because CCI has not yet been successful in the other judicial proceeding. Therefore, T.R. White’s judicial estoppel argument fails; however, the failure of this argument has no effect on the fact that the parties entered into a valid and binding contract.

ORDER

For the foregoing reasons, T.R. White’s motion for partial summary judgment as to Count III of its cross claim against CCI is ALLOWED. This court ORDERS CCI to assume the costs of T.R. White’s defense and reimburse T.R. White for defense costs already incurred.

CCI denies that it agreed to obtain insurance other than a general liability insurance, and further denies that it inserted the amount of two million dollars. However, in Chase’s deposition testimony, he acknowledged that an employee in their office must have typed the liability language into the insurance provision, but continued to deny that there was a contract.

CCI claims that it purchased and maintained a general liability policy which defined an insured under the policy to include: “any . . . organization . . . which requires in a ‘work contract’ that such person or organization be made an insured under this policy . . .” CCI has not provided this court with a copy of the general liability provision, nor has it demonstrated, that T.R. White had knowledge of such a provision.