**In re Joyce L. ARDOLINO, Debtor.**

**Robert J. Maha, Plaintiff,**

**v.**

**Joyce L. Ardolino, Defendant.**

**Bankruptcy No. 02–30790–MBM.
Adversary No. 03–2040–MBM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 12, 2003.

Brian B. Dutton, Grenen & Birsic, P.C., Pittsburgh, PA, Judith T. Romano, Feder-man and Phelan, Philadelphia, PA, S. James Wallace, Griffith, McCague & Fernsler, P.C., Pittsburgh, PA, for creditors.

Richard K. Witchko, Esq., Pittsburgh, PA, for debtor.

## MEMORANDUM AND ORDER OF COURT

M. BRUCE MCCULLOUGH,
Bankruptcy Judge.

**AND NOW**, this **12th day** of **September, 2003**, upon consideration of (a) the adversary complaint of Robert Maha, plaintiff herein (hereafter "Maha"), wherein Maha (i) appears to seek the entry by the Court of a money judgment in his favor in the amount of $10,000, which amount Maha contends he is entitled to as damages for the failure by Joyce Ardolino, the above-captioned debtor and defendant herein (hereafter "the Debtor"), to return Maha's $5,000 security deposit, and (ii) seeks a determination by the Court that his security deposit claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(4), and (b) the Debtor's answer to such complaint, as well as the Debtor's counterclaim, designated as "New Matter" within her answer, wherein the Debtor seeks damages from Maha totalling $23,300 for Maha's alleged improper early termination of a lease of residential realty from the Debtor; and subsequent to notice and a trial on the matter held on August 28, 2003, it is **hereby ORDERED, ADJUDGED, AND DECREED** that (a) the Debtor succeeds on her counterclaim but only to the extent of $2,600, which amount shall be, and has already been, set off against Maha's $5,000 security deposit, thereby resulting in an entitlement to Maha of the return of only $2,400 of his $5,000 security deposit, (b) Maha is entitled to a statutory doubling of such $2,400 as a remedy for the Debtor's

failure to timely return such $2,400, thereby entitling Maha to relief against the Debtor in the total amount of $4,800, (c) such claim for $4,800 is determined to be **NONDISCHARGEABLE but only in the amount of $2,400**, (d) **the remaining $2,400** of Maha's $4,800 claim is **DISCHARGED**, and (e) Maha must seek the entry of a money judgment in state court for the $2,400 portion of his claim that is found herein to be nondischargeable, as this Court will not enter a money judgment for such amount. The rationale for the Court's decision is set forth in some detail below.

## I.

In January 2000 Maha and his wife entered into a lease with the Debtor of what the Court will hereafter refer to as a Carriage Home, the terms of which lease (hereafter "the Lease") called for the monthly rental payment by Maha of $2,600 during the time period which is relevant to a resolution of the instant matter. Maha, at the commencement of the Lease and pursuant to paragraph 6 of the lease agreement between the parties (hereafter "the Lease Agreement"), deposited with the Debtor an amount of $5,000 to be held as a security deposit (hereafter the "Security Deposit").

■ Paragraph 27 of the Lease Agreement contains three additional handwritten provisions to the Lease, the last of which provides that Maha could unconditionally terminate the Lease upon 60 days notice to the Debtor of his intent to so terminate (hereafter the "Early–Out Clause"). The Debtor maintains that, the existence in the Lease Agreement of the unconditional Early–Out Clause notwithstanding, Maha was not free to terminate the Lease until January 30, 2002, which date, according to the Debtor, constituted the end of the primary term of the Lease pursuant to paragraph 1 of the Lease Agreement. The Debtor maintains as much because, argues the Debtor, the activation of the Early–Out Clause was actually subject to a condition, that is that such clause could only be activated by Maha in the event of a geographic change in Maha's employment, which geographic change in employment the Court finds did not occur; the Debtor, through both her own testimony and that of her ex-husband, provided parol evidence as to the existence of such condition regarding the Early–Out Clause. The Court must reject this particular position of the Debtor, as well as the relevancy of such parol evidence, however, because (a) the Early–Out Clause is free, and unambiguously so, from any condition as to its activation by the Debtor, (b) the Early–Out Clause can be read in harmony, and thus is not inconsistent, with paragraph 1 of the Lease Agreement, which conclusion is dictated since (i) the latter paragraph establishes the primary term of the Lease, providing, in particular, that the Lease "shall end ... on the 30th day of January 2002 *(unless sooner terminated under the provisions hereof)*," and (ii) the primary term of the Lease thus extended to January 30, 2002, only in the event that the Lease was not terminated earlier via another provision of the Lease, such as, for instance, the Early–Out Clause, and (c) the Court, as a matter of law, is not free to consider parol evidence as to the existence of a condition regarding the Early–Out Clause absent either an ambiguity in such clause or an internal conflict between such clause and another provision in the Lease Agreement, *see* 30 P.L.E.2d *Landlord and Tenant* § 27 at 116–118 (Bender 2003); 12 P.L.E.2d *Contracts* § 143 at 186, § 144 at 190, § 159 at 215–216, § 161 at 217–220

(Bender 2001).[1]

The Court finds that Maha provided the Debtor with notice on January 27, 2001, of his intent to terminate the Lease, and that the Lease was accordingly terminated on March 28, 2001. The Court also finds that Maha failed to make, and has never tendered to the Debtor, the $2,600 rental payment due for the month of March 2001, which rental payment was the last such payment to which the Debtor was entitled.

■ In light of the foregoing factual findings and legal conclusions, and pursuant to paragraph 6(B) of the Lease Agreement, the Debtor was entitled to withhold from, and thus to refuse to return to, Maha $2,600 of the $5,000 Security Deposit as a setoff for Maha's refusal to make the March 2001 rental payment. Moreover, the Debtor was entitled to so withhold without having to provide written notice to Maha that she intended to so withhold. *See* 68 P.S. § 250.512(a) (Purdon's 1994) ("Nothing in this section shall preclude the landlord from refusing to return the escrow fund ... for nonpayment of rent"); *McEvilly v. Tucci,* 239 Pa.Super. 474, 362 A.2d 259, 261–262 n. 4 (1976) (obligation by landlord to provide written list to tenant only applies when landlord withholds security deposit to compensate for damages to leasehold premises; such obligation does not apply when security deposit is set off against rent defaults). However, because the Lease was properly terminated by Maha by the end of March 2001, the Debtor is not entitled to recover for rents from April 2001 until she relet the Carriage Home on or around the end of September

2001. Accordingly, the Debtor's counterclaim fails except to the extent that she was entitled to withhold $2,600 of the Security Deposit.

■ Because the Debtor presents no other basis for retaining the remaining $2,400 of the Security Deposit from Maha, the Debtor was obligated to return such $2,400 to Maha within thirty (30) days of the termination of the Lease, or by approximately April 27, 2001. *See* 68 P.S. § 250.512(a). Because the Debtor failed to so return such $2,400, and since the Court finds that Maha provided the Debtor with his new address in writing prior to the termination of the Lease, Maha is entitled to recover from the Debtor double such $2,400, or $4,800. *See* 68 P.S. § 250.512(c) (Purdon's 1994).

## II.

■ Maha contends that the entirety of his claim regarding the return of his Security Deposit is nondischargeable pursuant to § 523(a)(4) on the basis that such claim is one for fraud or defalcation by the Debtor while she acted in a fiduciary capacity vis-a-vis Maha, or as one for embezzlement by the Debtor. The elements necessary to establish embezzlement, which concept, for purposes of § 523(a)(4), is defined under federal common law, *see In re Wallace,* 840 F.2d 762, 765 (10th Cir.1988); *In re Bevilacqua,* 53 B.R. 331, 333 (Bankr. S.D.N.Y.1985); *In re Imbody,* 104 B.R. 830, 840 (Bankr.N.D.Ohio 1989), are "(1) appropriation of funds for the debtor's own benefit by fraudulent intent or deceit; (2)

---

1. The Court also notes that, even if the Court could consider parol evidence regarding the Debtor's position that the Early–Out Clause is conditioned upon a geographic change in Maha's employment, such position by the Debtor is refuted in large part by the presence in the Lease Agreement of another early termination clause that is explicitly conditioned upon a geographic change in Maha's employment, *see* Lease Agmt. ¶ 20 ("Transfer Clause")—indeed, the Court would not likely find that the parties wished to add an early termination clause to the Lease that is essentially identical to, and thus would render superfluous, an already existent provision therein.

the deposit of the resulting funds in an account accessible only to the debtor; and (3) the disbursal or use of the funds without explanation of reason or purpose." 4 *Collier on Bankruptcy,* ¶ 523.10[2] at 523–76 (Bender 2003).

The Court notes as an initial matter that, even had the Debtor suffered a default judgment against herself for the $2,600 portion of the Security Deposit which the Court finds she had a right under the Lease Agreement to retain, such amount could not, in any event, be held to be nondischargeable under § 523(a)(4) as a debt for either fraud/defalcation—even presuming *arguendo* that the Debtor acted in a fiduciary capacity with respect to Maha—or embezzlement because, given the Court's conclusion that the Debtor had the right to retain such $2,600, she necessarily lacked the requisite intent to defraud, deceive, or defalcate with respect to such amount. The Court also holds that, because one-half of the doubled damages which a tenant is statutorily entitled to as a remedy under 68 P.S. § 250.512(c) for a landlord's failure to timely return that portion of a security deposit which it may not properly retain represents not actual funds that such landlord possesses but merely a penalty against such landlord, and since such penalty is called for regardless of whether such improper retention was the subject of fraud, deception, or defalcation by such landlord, such penalty cannot be determined to be nondischargeable under § 523(a)(4) as a debt for either fraud/defalcation—even presuming *arguendo* the presence of a fiduciary relationship between a debtor and its creditor—or embezzlement. Consequently, the second half of the $4,800 in damages that Maha is entitled to statutorily recover from the Debtor pursuant to 68 P.S. § 250.512(c), or $2,400 of such $4,800 in damages, cannot be held to be nondischargeable under § 523(a)(4)

as a debt for either fraud/defalcation—even presuming *arguendo* that the Debtor acted in a fiduciary capacity with respect to Maha—or embezzlement. Because the Debtor does not cite to, and the Court does not identify, any other paragraph of § 523(a) that could serve to render nondischargeable such $2,400 in damages, the Court shall hold that such amount is discharged by virtue of the Debtor's Chapter 7 discharge.

In light of the preceding paragraph, only $2,400 of the $4,800 in damages that Maha is entitled to statutorily recover from the Debtor pursuant to 68 P.S. § 250.512(c) can potentially be held to be nondischargeable pursuant to § 523(a)(4). For the reasons set forth below, the Court holds that such remaining $2,400 amount is nondischargeable under § 523(a)(4), not as a debt for fraud or defalcation by the Debtor while acting in a fiduciary capacity but rather as a debt for embezzlement by the Debtor.

### III.

The Court holds that the $2,400 claim in question does not constitute a debt for fraud or defalcation by the Debtor while acting in a fiduciary capacity because the Court concludes, in turn, that the Debtor did not act in a "fiduciary capacity" within the meaning of such phrase for purposes of § 523(a)(4). "The definition of 'fiduciary capacity' is a matter of federal law, which has consistently limited its scope to the capacity of one who holds property under either an express trust or ... a technical trust." *In re Bologna,* 206 B.R. 628, 632 (Bankr.D.Mass.1997); *see also In re Paeplow,* 217 B.R. 705, 709 (Bankr.D.Vt.1998) (same). "Although the necessary fiduciary relationship under § 523(a)(4) is a question of federal law, state law determines the existence of a trust." *Paeplow,* 217 B.R. at 709; *see also*

*In re Hatfield,* 1991 WL 498925 at *4 (N.D.Cal.1991) (same). "In Pennsylvania, it is black letter law that a[n express] trust is not created unless[, *inter alia,*] ... 'the settlor manifests an intention to create it,'" *In re Fulton,* 240 B.R. 854, 863 (Bankr.W.D.Pa.1999); *accord In re Heilman,* 241 B.R. 137, 161 (Bankr.D.Md.1999) (applying Maryland law); *Hatfield,* 1991 WL 498925 at *4 (presumably applying California law), which intention must include a desire by the settlor to pass legal title to, but not the beneficial interest in, the trust *res* to the trustee, *see In re Houck,* 181 B.R. 187, 191 n. 9 (Bankr. E.D.Pa.1995); *Fulton,* 240 B.R. at 863. "A technical trust is [commonly taken by courts today to mean] a trust imposed by state common law or statute." *Paeplow,* 217 B.R. at 709 (citing *Bologna,* 206 B.R. at 632); *see also In re Librandi,* 183 B.R. 379, 382 (M.D.Pa.1995) ("Most courts today, however, recognize the 'technical' or 'express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust type obligations are imposed pursuant to statute or common law"); *but see Heilman,* 241 B.R. at 162 ("Statutory trusts are not express or technical trusts").

The contrary pleas of Maha notwithstanding, paragraph 6 of the Lease Agreement—in particular, paragraph 6(D) thereof—does not serve to establish an express trust regarding the Security Deposit because the language of such paragraph does not evince (a) an intention by Maha, as the would-be settlor, to pass legal title to the Security Deposit, the would-be trust *res,* instead evincing merely an intention by Maha that such deposit be held by the Debtor as collateral for Maha's performance under the Lease, (b) an intention by the Debtor to undertake to perform as a trustee of a trust, and (c) an intention by the parties consequently to establish a trust. Maha contends alternatively that

the provisions of 68 P.S. §§ 250.511a-b & 250.512 operate to establish a technical trust regarding the Security Deposit. The Court must disagree, however, if for no other reason than that (a) such statutory provisions only require that security deposits be placed in a separate escrow account "after the second anniversary of the deposit of escrow funds" (i.e., as of the beginning of the third year of a lease), 68 P.S. § 250.511b(c) (Purdon's 1994), (b) such statutory provisions, with respect to security deposits during the first two years of a lease, technically only regulate the amount of such deposits and not that the same be escrowed, let alone that they be escrowed in a separate account, *see* 68 P.S. § 250.511a (Purdon's 1994), and (c) the Lease lasted for less than two years.

Therefore, the Debtor did not hold the Security Deposit under either an express or a technical trust, which means that (a) she did not act in a fiduciary capacity within the meaning of such phrase for purposes of § 523(a)(4), (b) the $2,400 claim in question cannot constitute a debt for fraud or defalcation by the Debtor while acting in a fiduciary capacity, and (c) such claim cannot be held to be nondischargeable pursuant to § 523(a)(4) under the guise of constituting such a debt.

## IV.

Although the $2,400 claim in question does not constitute a debt for fraud or defalcation by the Debtor while acting in a fiduciary capacity within the meaning of § 523(a)(4), the Court holds that such claim constitutes a debt for embezzlement by the Debtor, thereby dictating that such claim be declared nondischargeable pursuant to § 523(a)(4). The Court holds as it does because the Court finds that all of the elements for embezzlement set forth earlier herein at page 6 are satisfied with respect to the $2,400 portion of the Security

Deposit which the Court finds the Debtor did not have a right to retain. In particular, the Court finds, and does not understand the Debtor to even dispute, that (a) the Debtor deposited such $2,400, indeed deposited all $5,000 of the Security Deposit, in a bank account that was accessible only by herself (or at least was accessible by herself and was not accessible by Maha), (b) the Debtor appropriated such $2,400, indeed appropriated all $5,000 of the Security Deposit, for her own benefit, and (c) the Debtor used such $2,400, indeed used all $5,000 of the Security Deposit, without providing any explanation to Maha of a reason or purpose for such use.

The only real dispute by the Debtor regards whether she appropriated the $2,400 in question with the requisite fraudulent or deceptive intent. As set forth earlier herein, the Court finds that the Debtor (a) had a right to, and thus did not fraudulently or deceptively, appropriate $2,600 of the Security Deposit, and (b) did not have a right to appropriate the remaining $2,400 of the Security Deposit. With respect to her intent regarding appropriation of the $2,400 in question, the Debtor argues that, even if she lacked the legal right to so appropriate, she nevertheless *thought* she had the legal right to so appropriate, thereby precluding a finding that she so appropriated with fraudulent or deceptive intent. The Debtor argues and, in fact, testified, in particular, that she thought she had the legal right to so appropriate because, contends the Debtor, she thought that Maha had committed a rent default for the months of April 2001 until September 2001, against which such $2,400 could be legally offset. Unfortunately for the Debtor, the Court does not find to be credible the Debtor's testimony to the effect that she thought Maha had committed such a rent default, for which default she had a legal right to, *inter alia,* appropriate the $2,400 in question. The

Court so finds, in particular, because (a) the relevant provisions in the Lease Agreement, in the Court's view, are not reasonably susceptible of even a good faith mistaken interpretation that would support a right by the Debtor to pursue Maha for lost rents between April 2001 and September 2001, (b) the Debtor, both at the state court level pre-petition and in this Court subsequent to her bankruptcy petition filing, only pursued an action against Maha for such lost rents in response to actions first pressed against her by Maha for return of the Security Deposit, and (c) the Court does not find to be credible, in turn, that the Debtor would harbor a belief that Maha was liable for such lost rents, yet she would forego efforts to affirmatively pursue recovery of such rents, especially given her precarious financial condition. The Court likewise finds unconvincing the representation by the Debtor's counsel that the failure to list the Debtor's purported cause of action against Maha for such lost rents as an asset in the Debtor's bankruptcy schedules was the result of mere inadvertence—attributing such omission to inadvertence presupposes that the Debtor's counsel, in fact, intended to list such cause of action as an asset in the Debtor's schedules, which intent the Court does not find existed because, the Court finds in turn, neither the Debtor nor her counsel believed that such cause of action actually had any merit. Because the Court does not find that the Debtor believed that Maha had committed a rent default for which she had a legal right to appropriate the $2,400 in question, the Court must find that the Debtor appropriated such amount with fraudulent or deceptive intent.

In light of the foregoing, the $2,400 claim in question constitutes a debt for embezzlement by the Debtor, thereby dic-

tating that such claim be declared nondischargeable pursuant to § 523(a)(4).

## V.

**IN SUMMARY,** (a) Maha has a claim for $4,800 against the Debtor, $2,400 of which is **DISCHARGED** and $2,400 of which is **NONDISCHARGEABLE** as a claim for embezzlement pursuant to § 523(a)(4), and (b) Maha must seek the entry of a money judgment in state court for the $2,400 portion of his claim that is found herein to be nondischargeable.